Huey P. McDUFFIE, Plaintiff–Appellee,

v.

W.J. ESTELLE, Jr., et al.,
Defendants–Appellants.

No. 90–2573.

United States Court of Appeals,
Fifth Circuit.

July 15, 1991.

Adrian L. Young, Asst. Atty. Gen., Demetri Anastasiadis, Jim Mattox, Atty. Gen., Austin, Tex., for defendants-appellants.

Gregg C. Laswell, Andrews & Kurth, Houston, Tex., for plaintiff-appellee.

Before BROWN, JOHNSON, and WIENER, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Huey McDuffie, an inmate at the Ellis Unit of the Texas Department of Corrections (TDC) in June 1976, brought this action under 42 U.S.C. § 1983 and related statutes for a beating he alleges that he suffered at the hands of fellow inmates acting under the tacit authority of the TDC, and for subsequent disciplinary actions including punishment of solitary confinement. Based upon these events, he asserts that his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment due process rights were violated by the Director of TDC and other TDC officials responsible for the Ellis Unit "building tender" system and for charging and disciplining him for his participation in the incident.[1] The defendant officials filed a motion for summary judgment dismissal based on qualified immunity, which the district court rejected. We affirm the court's determination that the Eighth Amendment aspect of the case survives a qualified immunity claim, but reverse the court's finding that the relevant defendants are not immune from McDuffie's Fourteenth Amendment claim.

*How It All Began*

McDuffie alleges that on June 9, 1976, he was severely beaten by two fellow inmates of the Ellis Unit of TDC. He maintains that the individuals who beat him, Johnson and Skinner, were "building tenders"—inmates acting as auxiliary guards in a supervisory capacity over other inmates ostensibly to assist the civilian security forces in controlling the prison. After the altercation, McDuffie was immediately placed in administrative segregation on the orders of defendant L.A. Steele, the Major of Correctional Officers at the Ellis Unit. Three days later, on June 12, 1976, he was brought before the Ellis Unit Disciplinary Committee (the Committee), consisting of Steele, and M.C. Lightsey and Eli Rushing, Assistant Wardens at the Ellis Unit. The Committee found him guilty of offenses related to the incident and sentenced him to 15 days solitary confinement. McDuffie alleges that neither Johnson nor Skinner was disciplined for his part in the June 9 altercation.

1. McDuffie also named as defendants the two inmates who allegedly beat him, Johnson and Skinner. They are not parties to this appeal from the other defendants' Motion for Summary Judgment Based on Qualified Immunity.

In December 1976, McDuffie brought this action seeking compensatory and punitive damages for violations of his constitutional rights. The complaint named (i) W.J. Estelle, Director of TDC, R.M. Cousins, Ellis Unit Warden, and Steele (hereafter "building tender officials" or "building tender defendants") for Eighth Amendment violations associated with the building tender system; and (ii) Estelle, Steele, Lightsey, and Rushing (hereafter "Committee officials" or "Committee defendants") for Fourteenth Amendment violations arising out of the Committee's proceedings. In 1981 all of the defendant officials filed motions to dismiss and for summary judgment, which were denied on July 28, 1983. After further discovery, the same defendants brought similar motions based on qualified immunity, which were denied by court rulings entered in September 1989 and May 1990. The defendant officials bring this otherwise interlocutory appeal pursuant to *Mitchell v. Forsyth*, 472 U.S. 511, 525–28, 105 S.Ct. 2806, 2814–16, 86 L.Ed.2d 411, 423–26 (1985) (denial of a claim of qualified immunity is appealable "final decision" under 28 U.S.C. § 1291).

All of the officials argue that they are entitled to qualified immunity against McDuffie's constitutional claims for damages. McDuffie counters that the celebrated case of *Ruiz v. Estelle*, 503 F.Supp. 1265 (S.D.Tex.1980),[2] which found that TDC was ridden with abuse and enjoined common practices in violation of prisoners' constitutional rights, forecloses the defendants' qualified immunity defense.

### Standard of Review

■ All of the defendant officials may assert good-faith qualified immunity from retrospective relief when sued in their individual capacity, as they are in this case. *Procunier v. Navarette*, 434 U.S. 555, 561, 98 S.Ct. 855, 859, 55 L.Ed.2d 24, 30 (1978); *McCord v. Maggio*, 927 F.2d 844, 847 (5th Cir.1991). It is well established that "[t]his

immunity is defeated if the official[s] took the complained-of action[s] 'with the malicious intention to cause a deprivation of rights,' or the official[s] violated clearly established statutory or constitutional rights 'of which a reasonable person would have known.'" *McCord*, 927 F.2d at 847 (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 815, 818, 102 S.Ct. 2727, 2738, 2738, 73 L.Ed.2d 396, 409, 410 (1982)). This case proceeds under the second factor—violation of clearly established law.

■ Under this standard, our inquiry necessarily entails consideration of the factual allegations that make up McDuffie's claim for relief. It turns, however, on the question "whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or ... under the defendant's version of the facts ... whether the law clearly proscribed the actions the defendant claims he took." *Mitchell*, 472 U.S. at 528, 105 S.Ct. at 2816, 86 L.Ed.2d at 426; *see also Thompson v. City of Starkville*, 901 F.2d 456, 459 (5th Cir.1990). This inquiry is a purely legal one. Therefore, we review the district court's summary judgment denial of the defendants' qualified immunity claims *de novo*. *Id*.

### Constitutional Violations
### (i) Effect of Ruiz

McDuffie asserts that his constitutional rights were violated in two ways: (i) he suffered an injury as a direct result of the maintenance of the Ellis Unit "building tender" system in violation of his Eighth Amendment right to be free from cruel and unusual punishment; and (ii) he was subjected to disciplinary proceedings which deprived him of certain procedural rights and unfairly punished him for his involvement in the incident with the building tenders, in violation of the Fourteenth Amendment Due Process Clause.

---

**2.** In our discussion of *Ruiz*'s collateral estoppel effect on the case before us, we refer to the *Ruiz* district court's opinion and the relevant portion of the review by this Court, through Judge Rubin, affirming the district court's findings of constitutional violations and modifying remedial measures. *See Ruiz v. Estelle*, 679 F.2d 1115 (5th Cir.), *amended in part, vacated in part*, 688 F.2d 266 (5th Cir.1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983).

McDuffie contends that *Ruiz* collaterally estops the defendant officials from relitigating the issue of whether the defendants' conduct violated clearly established statutory or constitutional rights of which a reasonable person should have known, the first prerequisite to finding a state official liable for § 1983 violations. *See Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410. Consequently, he argues, relitigation of the issues by way of the defendant officials' plea of qualified immunity should be foreclosed. We agree that *Ruiz* has preclusive effect on the building tender portion of this case. Because of the different character of *Ruiz*, however, we cannot give the same effect to its findings with respect to the disciplinary proceeding practices here at issue.[3]

 In order to apply the federal law of collateral estoppel, a court must examine whether (i) the issue at stake is identical to the one involved in the prior litigation, (ii) the determination of the issue in the prior litigation was a critical, necessary part of the judgment in that earlier action, and (iii) special circumstances exist which would render preclusion inappropriate or unfair. *Montana v. United States*, 440 U.S. 147, 154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210, 217 (1979); *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1166 (5th Cir.1981). McDuffie's offensive use of collateral estoppel is authorized by the Supreme Court's decision in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). While complete identity of the parties in the two suits is not required, *Allen v. McCurry*, 449 U.S. 90, 94–95, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308, 313 (1980), one "special circumstance" which would counsel against the application of offensive collateral estoppel would operate when the defendant did not have an incentive to litigate the issue vigorously in the prior proceeding. *Id.* 439 U.S. at 332, 99 S.Ct. at 652, 58 L.Ed.2d at 562.

There is direct precedent for our application of collateral estoppel from *Bogard v. Cook*, 586 F.2d 399 (5th Cir.1978), *cert. denied*, 444 U.S. 883, 100 S.Ct. 173, 62 L.Ed.2d 113 (1979), a § 1983 damages action where we held that *Gates v. Collier*, 501 F.2d 1291 (5th Cir.1974), *aff'g* 349 F.Supp. 881 (N.D.Miss.1972), in which this Court granted a group of prisoners injunctive and declaratory relief from prison practices quite similar to the activities enjoined in *Ruiz*, "precluded relitigation of the constitutionality of conditions and practices" at the Mississippi prison involved in those cases. Another analogous scenario can be found in *Williams v. Bennett*, 689 F.2d 1370 (11th Cir.1982), *cert. denied*, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983). In that § 1983 case, the Eleventh Circuit held that prison officials were collaterally estopped, on account of prior litigation in which the prison's practices were ruled unconstitutional,[4] from relitigating the issue of whether conditions and practices in the prison violated the inmate plaintiff's Eighth Amendment rights. *Id.* at 1382. *See also Crowder v. Lash*, 687 F.2d 996, 1011 (7th Cir.1982) (Indiana State Prison inmate may in subsequent damages action make collateral estoppel use of prior litigation involving prison).

In *Ruiz*, affirmed by this Court with modifications of certain remedial provisions,[5] the parties actually litigated, and the district court necessarily decided, the two precise constitutional issues before us. These issues were also critical, necessary ingredients in that case. *See* 503 F.Supp. at 1303–07, 1358.

 A remaining element is that the defendant have an incentive to vigorously defend the critical issue in the prior proceeding. *See Parklane Hosiery*, 439 U.S. at 332, 99 S.Ct. at 652, 58 L.Ed.2d at 562. Of course the defendant Estelle was a named defendant in the *Ruiz* litigation. In addition, those officials not named as de-

---

**3.** For the same reason, *Ruiz* has no bearing on the question of individual constitutional wrongdoing. *See infra* note 17.

**4.** *See Pugh v. Locke*, 406 F.Supp. 318 (M.D.Ala. 1976), *aff'd with modifications sub nom. New-*

*man v. Alabama*, 559 F.2d 283 (5th Cir.1977), *rev'd in part sub nom. Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978).

**5.** *See supra* note 2.

fendants in *Ruiz* were nevertheless bound by the injunction as agents and employees of TDC and Estelle. *See Ruiz*, 679 F.2d at 1166 (consent decree injunction binding on "Defendants, their successors, agents and employees"). We agree with the Eleventh Circuit that this is sufficient to furnish at least a modicum of incentive. *See Williams*, 689 F.2d at 1382 n. 13. The question then becomes whether the incentive to defend each particular issue in the first case was sufficiently vigorous.

With respect to the Eighth Amendment issue, prior to *Ruiz*, the building tender system was an established infrastructure in TDC whereby inmates sometimes provided "the only order existent in inmates' living quarters...." *Ruiz*, 503 F.Supp. at 1303. At issue in *Ruiz* was whether the entire building tender practice, upon which TDC relied heavily to fulfill security needs, should be prohibited. Because this was of such great importance, the requirement that the defendant have an incentive to litigate the issue vigorously in the prior proceeding is satisfied with respect to the Eighth Amendment issue. *See Williams*, 689 F.2d at 1382 (in prison conditions case, in light of serious constitutional violations and broad declaratory and injunctive relief sought in earlier equitable action, incentive to vigorously litigate existed for collateral estoppel purposes). *But see, Gutierrez v. Coughlin*, 841 F.2d 484, 486 (2d Cir.1988) (prison officials bound by earlier state court equitable action in which they were not subject to personal liability did not have sufficient incentive to litigate the state case for collateral estoppel to apply in subsequent damages action).

This final collateral estoppel element having been satisfied, *Ruiz*, which held both that the building tender system directly contravened clearly established law in effect in 1976, 503 F.Supp. at 1307, 1388, and that prison officials were "clearly chargeable with notice of the type of constitutional violations which have been proven," 503 F.Supp. at 1385,[6] forecloses relitigation of the issue whether McDuffie was denied reasonable protection from violence at the hands of unconstitutional building tenders. The building tender officials, therefore, are not entitled to qualified immunity on the Eighth Amendment issue.[7]

■ McDuffie's contention that he was denied constitutional due process in the disciplinary proceedings which followed the fight is more troublesome, as we are not certain that the defendants had a strong incentive to litigate this issue vigorously in *Ruiz*. *Ruiz* dealt with many of the problems attendant to prison disciplinary proceedings in TDC about which McDuffie complains. The court found that typical TDC proceedings failed to comply with the minimum requirements for satisfaction of due process in state prison disciplinary

---

6. The "clearly established law" upon which *Ruiz* relies makes out a constitutional prohibition against the placing of inmates in positions of authority and supervision over other inmates, as is alleged happened here. The court concluded that a 1973 Texas statute, *see* Tex.Rev.Civ.Stat. Ann. art. 6184k–1 (Vernon Supp.1980) (repealed 1989), derived from Acts 1973, 63rd Leg., p. 796, ch. 357, which "outlawed the placement of any inmate in a supervisory or administrative capacity over other inmates and the administration of disciplinary action by any inmate to other inmates," *see* 503 F.Supp. at 1304, and this Court's opinion in *Gates*, 501 F.2d 1291, *see* 503 F.Supp. at 1304–05, put the TDC on notice well before 1976 that failure to provide adequate protection against physical assaults on inmates by other inmates constituted an Eighth Amendment violation. *See Gates*, 501 F.2d at 1322. This Court dismissed the appeal of the building tender portion of *Ruiz* after TDC officials agreed to eliminate this practice. *See Ruiz*, 679 F.2d at 1164.

7. Even if we were to hold that collateral estoppel is not applicable to this issue, we would conclude that straightforward application of stare decisis would preclude reconsideration of the constitutionality of the building tender system. *See Bogard*, 586 F.2d at 409. It is not enough that the practice be held to be unconstitutional, however. Our collateral estoppel finding takes the further step of meeting the Supreme Court's recently-imposed requirement that the unlawfulness be apparent to reasonable officials in the defendants' positions. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 531 (1987) ("in the light of preexisting law the unlawfulness must be apparent"). *See also Lynch v. Cannatella*, 810 F.2d 1363, 1374 (5th Cir.1987) (qualified immunity accorded to official insofar as conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known). *See* discussion of disciplinary practices, *infra*.

hearings announced by the Supreme Court in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). These mandates, applicable to all TDC disciplinary hearings, *see Ruiz,* 503 F.Supp. at 1351, *aff'd,* 679 F.2d at 1155, are:

(1) The prisoner must be provided with 24 hours advance written notice, informing him of the charges against him, in order to enable him to prepare a defense.

(2) Upon a finding of guilty, the factfinders must provide the prisoner with a written statement of the disciplinary action and the evidence the disciplinary body relied on in reaching its conclusion.

(3) The charged prisoner must be given an opportunity to present his side of the story and must be allowed to call witnesses in his behalf.

(4) The disciplinary body must be detached and neutral.

*Id.* 418 U.S. at 564–66, 571, 94 S.Ct. at 2978–79, 41 L.Ed.2d at 956–57, 959.

However, *Ruiz* required remedial measures for TDC which were more stringent than the *Wolff* mandates. *See Ruiz,* 503 F.Supp. at 1358–59, *aff'd,* 679 F.2d at 1155–56.[8] Among them, the court required that TDC officials determine that administrative segregation is necessary to safeguard institutional security before segregating a charged inmate prior to his hearing. This requirement was based on the court's conclusion that a charged inmate, if segregated from other inmates who may have important evidence, is deprived of a meaningful opportunity to prepare a defense in anticipation of a hearing. The court also required that the 24–hour violation notice contain a detailed notice of charges, including all basic information contained in the offense report filed by the charging officer, and that disciplinary committees not include any officer who has filed charges or otherwise participated in any incident which led to the charges. *Id.*[9]

Although these requirements obliged TDC to undergo changes to accommodate new procedures, they were not nearly as disruptive and revolutionary as the banning of the building tender system. Coupled with the fact that *Ruiz* was an action for equitable relief only, we do not perceive the incentive to oppose the sought-for injunction imposing these changes to be sufficiently strong to require application of collateral estoppel. This incentive certainly does not approach the prison system's interest in preserving a large part of its security apparatus. We therefore hold that *Ruiz* does not foreclose relitigation of the due process issue via the Committee officials' qualified immunity plea.[10]

### (ii) Clearly Established Law—Disciplinary Proceedings

■ Thus, we must look to see whether the defendant officials' actions violated clearly established law in existence in June

---

**8.** *See Ruiz,* 679 F.2d at 1155–56 ("It is well-settled that, under the fourteenth amendment, a court may require remedial measures that the Constitution does not of its own force initially require.") (footnote omitted); *see also Swann v. Charlotte–Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15–16, 91 S.Ct. 1267, 1275–76, 28 L.Ed.2d 554, 566 (1971) (to prevent further constitutional deprivations, a court may order forms of relief not normally required by the Constitution but nevertheless necessary given the circumstances if the court's efforts are to be successful).

**9.** Other requirements imposed by the court include: (1) the TDC was required to tape record all disciplinary hearings; (2) inmates must be given written justification for a disciplinary committee's refusal to allow witnesses to testify; and (3) each disciplinary committee was required to make an individual determination whether a charged inmate is in need of a counsel substitute to represent him at the hearing, taking into account the inmate's literacy skills, mental abilities, and command of the English language, and allow the counsel substitute to represent the inmate at his hearing, if necessary. *See Ruiz,* 503 F.Supp. at 1358, *aff'd,* 679 F.2d at 1155.

**10.** In contrast to its determination that the entire building tender system is unconstitutional, *Ruiz* did not bar TDC prison disciplinary proceedings, but found widespread deprivations of due process in their execution. *See* 503 F.Supp. at 1346–59, *aff'd,* 679 F.2d at 1155. We must look at the facts of this case independently to determine whether these violations occurred in the instant case. Consequently, stare decisis does not direct us to hold that McDuffie was denied his Fourteenth Amendment rights.

1976. The *Ruiz* requirements, which were set down in 1980, do not earn the label "clearly established" for purposes of imposing liability on the defendants in this 1976 damages action.[11] Fitting McDuffie's allegations into the mandates from *Wolff,* the 1974 Supreme Court case upon which *Ruiz* relies with respect to prison disciplinary proceedings, it is clear that the first three minimum requirements were satisfied in McDuffie's case. First, it is undisputed that on June 9, 1976, the day of the incident, McDuffie was presented with a violation notice detailing the charges against him—"disrespectful attitude" and "fighting without a weapon." This notice was provided to McDuffie well over 24 hours before the disciplinary hearing, which took place on June 12. In addition, the charges themselves are fairly self-explanatory and are adequate to meet the first *Wolff* requirement.[12]

In compliance with the second *Wolff* requirement, the disciplinary committee also prepared the required written "Offense Report" sufficiently detailing the evidence upon which it relied to reach its finding of guilt and to impose the punishment of solitary confinement.[13] Third, the Offense Report contained a section entitled "Statement of Inmate to Committee," which reads:

> While before the committee inmate McDuffie stated that he understood the charges and did not request witnesses in his behalf. It was determined that he could represent himself.

McDuffie signed the form directly beneath this statement.

*Wolff*'s fourth requirement was also satisfied. Specifically, McDuffie argues that defendant Steele, who he alleges investigated the fighting incident and later served on the disciplinary committee, added the

---

**11.** We reject those arguments which McDuffie attempts to attach to his collateral estoppel claim which do not stand independent of it. *See supra* note 10. For instance, *Ruiz* found that the typical "offense report" used in TDC, which ostensibly fulfilled the second *Wolff* requirement, set forth only the finding of guilt and the punishment imposed. *Id.* at 1353. McDuffie's claim that he "received an offense report with the constitutional infirmities found to exist in *Ruiz*" is directly contradicted by the record evidence. *See supra* note 7, and accompanying text.

**12.** McDuffie asserts that, because he was placed in administrative segregation immediately after being charged with these infractions, he was deprived of an opportunity to prepare a defense. As we have stated, *Ruiz* found such a practice to violate the charged inmate's due process rights. However, this interpretation of *Wolff* was not clearly established for purposes of the *Anderson* requirement that the defendant officials' knowledge of the requirement be objectively reasonable. *See Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039, 97 L.Ed.2d at 531.

See also *Hewitt v. Helms,* 459 U.S. 460, 474, 103 S.Ct. 864, 872, 74 L.Ed.2d 675, 689–90 (1983), which upheld the use of administrative segregation prior to disciplinary proceedings where used to reduce any threat to the prison population, and also specifically rejected the notion that an inmate awaiting a disciplinary hearing should be afforded trial-type procedural safeguards before being placed in segregation. 459 U.S. at 474, 103 S.Ct. at 872, 74 L.Ed.2d at 690. The Court did conclude, however, that an "informal nonadversary review of evidence" is

required prior to segregating the prisoner. *Id. Hewitt* having been decided in 1983, this minimum requirement was not in effect on the June 1976 magic date and therefore does not affect our conclusion that McDuffie's placement in administrative segregation did not violate the first *Wolff* prong.

**13.** This section, entitled "Offense in Detail," provides:

> On June 9, 1976, at approximately 6:25 P.M., the writer was racking up G–15 after sick call. Inmate [McDuffie] slow bucked on the way to his cell on 3–row and was only on 2 row after I had racked the 3rd row. When he saw me he asked if I had been to 3–row. I stated that I had. He yelled out "you had better let me in on 3–row". This was done in a very belligerent and disrespectful manner so I told him to go to the dayroom and wait until I could take care of short line. On his way to the dayroom he was cussing. As he passed inmate JOHNSON, Wadell, #204471 I heard him say "f–k you" and the next thing the two inmates were fighting. The fight was quickly stopped. I could not see that inmate Johnson did anything and quickly stopped. I could not see that inmate Johnson did anything and inmate McDuffie undoubtedly provoked the scuffle as he was in a belligerent mood. The inmates were sent to the major's office where inmate McDuffie saw the major and was then placed on C–8, segregation. He received his 24–hour violation. This date [June 12, 1976] he was placed before the Unit Disciplinary Committee for their decision.
> /s/ Rick Mesecher
> Officer Making Report

taint of partiality to the proceedings. Again, *Ruiz*, which held that a prison disciplinary committee "must not include persons who were involved in the incident being judged," *see* 503 F.Supp. at 1355, cannot be used to answer the Committee defendants' argument that the disciplinary body that decided McDuffie's case was itself detached and neutral. *Ruiz* relies on *Morrissey v. Brewer*, 408 U.S. 471, 486, 92 S.Ct. 2593, 2602, 33 L.Ed.2d 484, 497 (1972), which held that officials involved in the incident should not also judge it. However, we would not expect reasonable persons in the Committee defendants' positions to have understood that *Morrissey*, which dealt with parolees, governed their actions. This is especially true in view of the Supreme Court's statement in *Wolff* that "one cannot automatically apply procedural rules designed for free citizens in an open society, *or for parolees or probationers under only limited restraints*, to the very different situation presented by a disciplinary proceeding in a state prison." *Wolff*, 418 U.S. at 560, 94 S.Ct. at 2977, 41 L.Ed.2d at 953 (emphasis added). *See Anderson*, *supra* note 6.

There was specific precedent in three circuits prior to 1976 establishing due process protection in the prison disciplinary setting relevant here. The Seventh Circuit held in *United States ex rel. Miller v. Twomey*, 479 F.2d 701 (7th Cir.1973), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974), that the prison disciplinary committee should not include the officer reporting the infraction—the charging officer,[14] but said nothing about "investigating officers." *Id.* at 716. The Third Circuit in *Braxton v. Carlson*, 483 F.2d 933 (3d Cir.1973), agreed that the prison official who prepares the formal charges against the prisoner should not serve as a disciplinary committee member; however, the court held that another official who helped to break up the "near-mutiny" which led to the subsequent disciplinary proceedings could later serve impartially as a committee member. *Id.* at 941. On the other hand, in *Clutchette v. Procunier*, 497 F.2d 809 (9th Cir.1974), *modified*, 510 F.2d 613 (9th Cir. 1975), *reversed on other grounds sub nom. Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), the Ninth Circuit determined that a prison official who has participated in the case as an investigating or reviewing officer or who otherwise has personal knowledge of the incident involving the accused inmate should not serve on the disciplinary board judging the incident. *Id.* at 820.

Absent binding precedent in this circuit and faced with somewhat conflicting decisions in the two circuits which actually addressed the issue relevant here, we cannot say that the law as set forth by the Ninth Circuit in *Clutchette* was "clearly established" so as to affect the actions within the Fifth Circuit of the Committee defendants in 1976. *See Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1000–01, 43 L.Ed.2d 214, 225 (1975) (officials not charged with predicting the future course of constitutional law); *Williams v. Treen*, 671 F.2d 892, 903 (5th Cir.1982), *cert. denied*, 459 U.S. 1126, 103 S.Ct. 762, 74 L.Ed.2d 977 (1983) (same); *see also Lum v. Jensen*, 876 F.2d 1385, 1389 (9th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 867, 107 L.Ed.2d 951 (1990) (absence of precedent in circuit and conflict among other circuits probably sufficient to undermine clearly established nature of a right). Accordingly, whatever part the Committee officials might have played in allowing Steele to serve as a member of the Committee nonetheless "could reasonably have been thought consistent with the right[ ] they are alleged to have violated"—due process violations in the disciplinary proceedings. *See Anderson*, 483 U.S. at 638, 107 S.Ct. at 3038, 97 L.Ed.2d at 529.

■ We also reject McDuffie's contention that because Skinner and Johnson were not disciplined, the disciplinary committee could not have been neutral. The Ellis Unit officials' decision *not to bring charges* against Skinner and Johnson has no bearing on the question whether McDuf-

---

**14.** McDuffie admits that Officer Mesecher, who was not on the committee, and not Steele, brought the formal charges against the inmate. *See supra* note 13.

fie himself was accorded due process, especially given the long-established wide discretion granted prison officials. *See Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447, 473 (1979).

Moreover, the evidence as detailed in Officer Mesecher's description of the episode reveals that McDuffie provoked the scuffle and that it was over shortly.[15] The evidence further shows that Skinner and Johnson were not allowed to continue beating McDuffie after they had gotten the better of him. The committee was entitled to rely on Mesecher's eyewitness testimony in judging the individuals involved. *See Gibbs v. King,* 779 F.2d 1040, 1044 (5th Cir.1986), *cert. denied,* 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 659 (1986) ("Federal courts will not review the sufficiency of the evidence at a disciplinary hearing; a finding of guilt requires only the support of 'some facts' or 'any evidence at all.' ") (citations omitted).

We conclude from this analysis that, under these circumstances, the Committee officials complied with the clearly established law in force at the time of the events in question in respecting McDuffie's due process rights. *See Wolff, supra; see also Baxter,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) (restricting the reach of *Wolff*). We therefore hold that the defendant officials are protected by qualified immunity from liability on McDuffie's Fourteenth Amendment Due Process claim.[16]

### Conclusion

We therefore REVERSE the district court's ruling that the Committee defendants are not entitled to qualified immunity on McDuffie's due process claims. However, we hold that, on these facts, the building tender defendants are not entitled to qualified immunity and thus AFFIRM the district court's denial of their summary judgment motion on this issue and REMAND for further proceedings in accordance with this opinion.

### Issues On Remand

Our holding that the Eighth Amendment claim survives under these facts forecasts neither imposition of liability nor the need for a full trial. Nor does it preclude the possibility of directed verdict or even summary judgment, if properly invoked. Without foreclosing the trial court's independent action on remand, we point out that McDuffie must still establish his claim on the merits. This will require proof of the essential elements of individual culpability on the parts of the building tender officials[17] and of the assailants, Johnson and Skinner, and a showing of compensable injury.[18]

---

**15.** *See supra* note 13.

**16.** As a result of our dismissal of the Fourteenth Amendment claim, the court on remand should dismiss those Committee defendants named solely for their involvement in the disciplinary hearings.

**17.** Our finding that *Ruiz* precludes relitigation of McDuffie's Eighth Amendment claim does not resolve the question whether each of the building tender defendants are individually liable. The approach to causation which the court took in *Ruiz* was broad and generalized, rather than focused on the subjective state of mind each official, as is required when state officials are sued in their individual capacities for damages for personal injuries. Therefore, *Ruiz* does not have any preclusive effect on the issue of the defendant officials' individual constitutional wrongdoing. *See Williams,* 689 F.2d at 1383 (findings of prior action for sweeping injunctive and declaratory relief not outcome-determinative, as essential proof of individual liability not

considered in earlier case); *Crowder,* 687 F.2d at 1011 (same); *Bogard,* 586 F.2d at 409 (same).

The court's inquiry on remand is defined by the language of § 1983 itself, which provides that to impose individual liability on an official it must be shown that the official has subjected or "caused to be subjected" the plaintiff to the constitutional deprivation. 42 U.S.C. § 1983. The court will be guided by the Supreme Court's recent pronouncement of the applicable standard of proof in prison conditions cases. *See Wilson v. Seiter,* —— U.S. ——, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *see also Lew v. Parish of Terrebone,* 894 F.2d 142, 145 (5th Cir.1990); *Farrish v. Miss. State Parole Bd.,* 836 F.2d 969, 977 (5th Cir.1988).

**18.** McDuffie must allege that he suffered a significant injury in order to recover under § 1983. *See Huguet v. Barnett,* 900 F.2d 838, 841 (5th Cir.1990) (finding of significant injury central to test for recovery under § 1983 for excessive force) (*citing Johnson v. Morel,* 876 F.2d 477, 480 (5th Cir.1989) (en banc)); *McCord,*

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

927 F.2d at 849 and n. 1 (significant injury applicable in prison conditions cases). He will have to meet the minimum threshold of this requirement as recently defined by this Court. *See Hudson v. McMillan,* 929 F.2d 1014, 1015 (5th Cir.1991), *cert. granted,* —— U.S. ——, 111 S.Ct. 1679, 114 L.Ed.2d 75 (1991) (injuries to teeth and bruises to body not enough to constitute significant injury); *Wise v. Carlson,* 902 F.2d 417, 417 (chest and forearm bruises and upper eyelid hematoma are insufficient injuries for § 1983 claim).