USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1119 HERTZL SINAI, Plaintiff, Appellee, v. NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY, ET AL., Defendants, Appellants. ____________________ No. 92-1153 HERTZL SINAI, Plaintiff-Appellant, v. NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY, ET AL., Defendants, Appellees. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Walter Jay Skinner, U.S. District Judge] ___________________ ____________________ Before Torruella, Cyr and Oakes,* Circuit Judges. ______________ _____________________ ____________________ * Of the Second Circuit, sitting by designation. Amy D. Seifer, with whom John D. Corrigan, was on brief for _____________ ________________ defendants. Gabriel O. Dumont, Jr. for plaintiff. ______________________ ____________________ August 24, 1993 ____________________ -2- TORRUELLA, Circuit Judge. After failing to gain ______________ employment at NYNEX Information Resources Co. ("NIRC"), appellee brought suit for race and national origin discrimination under 42 U.S.C. 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. A jury found for the plaintiff on race ______ discrimination, and the district judge, finding himself bound by the jury's factual findings, found for the plaintiff on national origin discrimination. Appellant contends that the evidence was insufficient to sustain the judgments, such that the judge erred when he refused to grant a judgment notwithstanding the verdict. Appellant also contends that the district court instructed the jury incorrectly and issued two erroneous evidentiary rulings. Appellee, in response, complains that the district court refused to grant an additional award of damages under Title VII. Finding this volley of allegations unconvincing, we affirm. We use the same standard to review the evidence in this case that the district judge used when he ruled on the motion for judgment n.o.v. Biggins v. Hazen Paper Co., 935 F.2d 1405, 1409 _______ ________________ (1st Cir. 1992). When a jury has delivered a verdict, we examine the evidence, including all facts and inferences, in the light most favorable to the verdict. Id. We overturn the verdict when ___ the evidence leads a reasonable person to one conclusion and one conclusion only: that the losing party was entitled to win. Id. ___ The evidence, viewed in this light, follows. Appellee was born in Israel of parents of Jewish/Hebrew -3- heritage. He came to the United States in 1973 after a five-year stint in the Israeli Air Force and a two-year stint in sales at a private company. In the United States he received a Bachelor of Science degree from Suffolk University and held various jobs. When his wife, a NIRC employee, told him that positions in directory advertising sales were available at NIRC, appellee submitted a resume and cover letter. This was the first step in appellee's quest to win a position at NIRC, and it occurred in the spring of 1984. NIRC informed appellee that no positions were available at the time, but that his application would be added to the waiting list for future openings. Appellee filed a new application in the Summer of 1984 and followed up with a phone call to the hiring supervisor, Marlene Dumas. During the conversation, Ms. Dumas revealed that applicants needed a college degree and sales experience to pass the initial screening. Appellee responded that he had both, and Ms. Dumas delved further into appellee's career background. Ms. Dumas asked appellee where he came from, or where he received his sales experience. When appellee responded Israel, Ms. Dumas stated "Israel doesn't count." Ms. Dumas denies making this comment, but testified that, in any event, appellee's sales experience in Israel was too far removed in time from the application date to satisfy the requirement. She explained that sales experience garnered more than three to five years earlier is considered stale. Appellee filed a new application in late November and -4- again followed up with a phone call. He was told that he would be interviewed within the coming year. Indeed, appellee was called for a test and interview in March, 1985. He passed the test. During the subsequent interview, Ms. Dumas reportedly asked "Did you say you were from Israel?" and appellee detected a look of disgust on her face. A letter soon followed, informing appellee that he would not be considered further. Undaunted, appellee reapplied in the Summer of 1985, and again in early 1986. In mid 1986, Ms. Dumas left NIRC. Appellee filed yet another application to Ms. Dumas's replacement and again followed up with a phone call. In this conversation, appellee learned that NIRC had adopted a policy forbidding the hiring of NIRC-employee spouses. As appellee's wife worked at NIRC, appellee could not be hired. Stunned, appellee pursued further information from various supervisors. He learned that the alleged "no-spouse" policy was unwritten and informal. Appellee was unsatisfied with this news, as he knew of a couple that was hired after appellee submitted his several applications. During the relevant time period, NIRC made other pertinent hiring decisions. First, NIRC hired several adherents of the Jewish faith for directory advertising sales positions. Second, NIRC hired several individuals who did not meet the stated screening criteria; these individuals either did not have a college degree or did not possess sufficient sales experience. The above culminated in appellee bringing a two-pronged discrimination suit. He claimed that he suffered discrimination -5- on the basis of his Jewish/Hebrew race and on the basis of his national origin, Israel. The race claim arose under 1981, which guarantees that "all persons" in the United States will have the same rights as "white citizens" "to make and enforce contracts." The national origin claim arose under Title VII, which makes the refusal to hire an applicant because of his "race, color, religion, sex, or national origin" unlawful. As plaintiffs are entitled to a jury trial in 1981 cases, but not in Title VII cases, the district judge conducted a jury trial on race discrimination before he himself decided the national origin discrimination claim. Appellant argues that evidence of race and national origin discrimination are not inextricably intertwined in this case, and that appellee failed to adduce any evidence to support a finding of discrimination on the basis of his Jewish/Hebrew race, as opposed to his Israeli national origin. Appellant thus concludes that a rational jury could not have found race discrimination. While we agree with the district court that the evidence of race discrimination was thin in this case, we also agree with the district court that the jury was entitled to reach the result it did. Appellee made out a prima facie case of discrimination as it was described in McDonnell-Douglas Corp. v. _______________________ Greene, 411 U.S. 792 (1973). First, he established that he was ______ Jewish/Hebrew, defined as a protected race by the Supreme Court in Saint Francis College v. Al-Khazraji, 481 U.S. 604 (1987), and _____________________ ___________ -6- Shaare Tefila Congregation v. Cobb, 481 U.S. 615 (1987). Second, __________________________ ____ he applied for a job for which he was qualified.1 Finally, appellee was rejected, but the position remained available to other candidates with similar credentials and even some others with apparently fewer credentials. In addition to establishing the prima facie case of discrimination, appellee testified that Ms. Dumas twice disparaged appellee's Israeli background. Although appellant claims that these events do not establish race discrimination, the jury could find that Israel is one of those countries in which the populace is composed primarily of a particular race. As Justice Brennan stated of race and national origin discrimination, often "the two are identical as a factual matter: one was born in the nation whose primary stock is one's own ethnic group." Saint Francis College, 481 U.S. at 614 (Brennan, _____________________ J., concurring). That Israel is a Jewish state, albeit not composed exclusively of Jews, is well established. Furthermore, it is undisputed that appellee is of Hebrew/Jewish descent, the stock primarily associated with Israel. The jury thus could have determined that NIRC, through Ms. Dumas, discriminated against appellee on the basis of his Hebrew/Jewish race by disparaging Israel. The jury also could have chosen to disregard NIRC's ____________________ 1 It is undisputed that appellee earned a college degree. As for his career experience, we are satisfied that he was qualified because he passed the initial screening process and passed the required test. Furthermore, appellee presented evidence that less well qualified candidates were hired over him. -7- evidence. NIRC attempts to defuse the allegation of discrimination by pointing out that several adherents of the Jewish faith were hired for directory advertising positions. The jury could have determined, however, that the other Jewish hires did not rebut appellee's contention of race discrimination. The relevant issue in a discrimination claim is whether the defendant discriminates against the plaintiff on an improper basis. The fact that the defendant hired other members of the protected class is evidence that the jury can consider in reaching the ultimate issue, but is not dispositive in itself. The jury must weigh all of the evidence. In this case, the jury could conclude that appellant discriminated against appellee on the basis of race in spite of the other Jewish hires. The fact that NIRC advanced different reasons for refusing to hire appellant at different times could have led the jury simply to disbelieve NIRC. NIRC first alleged that no jobs were available and that appellee's resume was unclear. NIRC then alleged that appellee was not as qualified as other candidates. Finally NIRC announced that it had adopted a "no-spouse" policy barring appellee's employment. This policy was unwritten and, according to Ms. Dumas, not communicated to her until May 1986, even though it was adopted in late 1984 or early 1985. The jury easily could have determined that these reasons were unsatisfactory, not true, or a pretext to cover up racial animus. Indeed, appellee presented evidence that applicants with fewer credentials than appellee were hired -- directly contradicting -8- one of NIRC's rationales. We conclude that the evidence is not so heavily weighted in appellant's favor to justify setting aside the jury verdict. The jury was entitled to find that appellee's race led to his failure to gain employment at NIRC. The evidence does not lead inescapably to the opposite conclusion. Appellant complains that the district court improperly allowed the jury to mingle race discrimination with national origin. During its deliberations, the jury presented the following questions to the district judge: "Does discrimination because of race carry the same weight as discrimination because of national origin? Or are they to be considered the same in this case?" The judge responded by emphasizing that the case only confronted the jury with the issue of race discrimination. The judge added that "you can also consider, however, whether any comments or any evidence about national origin may bear, may have a significance to you in determining whether there was a discrimination on the basis of race." We find no error in this instruction. We already noted with approval the comments made by Justice Brennan in Saint _____ Francis College, and believe that the exchange discussed above _______________ reflects those comments. To repeat, race and national origin discrimination may present identical factual issues when a victim is "born in a nation whose primary stock is one's own ethnic group." The judge properly responded to the jury's question: in certain circumstances, including the present case, national -9- origin and race discrimination may overlap. The judge did not tell the jury that national origin discrimination was identical to race discrimination, however. He instructed them that national origin discrimination could be used, together with other evidence, to arrive at a conclusion vis-a-vis race discrimination. We come now to two evidentiary rulings that appellant claims were erroneous. We review them only for abuse of discretion. Losacco v. F.D. Rich Construction Co., 992 F.2d 382, _______ __________________________ 385 (1st Cir. 1993); Willhauck v. Halpin, 935 F.2d 689, 717 (1st _________ ______ Cir. 1991). Appellant first contends that the district court judge improperly allowed certain testimony by appellee's expert psychologist. According to the doctor, Mr. Sinai was extremely depressed, but his prognosis was good if appellee was vindicated by the court in his discrimination claim. In anticipation of this testimony, appellant raised an objection, arguing that it only served to encourage a verdict on improper grounds, and was therefore unduly prejudicial. The trial transcript shows that the judge carefully considered the objection. He found the doctor's prognosis for Mr. Sinai's depression to be such an important piece of evidence that it would have been unfair to exclude it. He concluded that the testimony gave the jury a way to limit damages for future emotional distress, in the event that it rendered a verdict for Mr. Sinai. Furthermore, the judge felt that appellant's counsel -10- could undo any prejudice by arguing in summation that the trial process was not a therapeutic process for the jury to cure Mr. Sinai's ailments regardless of fault. Finally, the judge vowed to intervene if the witness entered into any improper testimony. In short, the district judge realized that he faced a close issue, weighed the alternatives, and reached the most satisfactory conclusion. Under these circumstances, we cannot find an abuse of discretion in the district court's ruling. Appellant's next claim of evidentiary error concerns appellee's deteriorating relationship with his wife, and her own discrimination and harassment claims. Again, the disputed testimony came from appellee's psychologist, this time during redirect examination. The doctor stated that "[s]he experienced what she believed was harassment by [appellant] because of . . . her husband's decision to file charges against [appellant] for job discrimination against himself." According to the doctor, this harassment formed the basis of the Sinai's marital difficulties, and, in turn, Mr. Sinai's depression. It appears that Mrs. Sinai filed a claim against appellant with the Massachusetts Commission Against Discrimination and received a favorable ruling, which fact came out in the doctor's testimony. During the previous cross-examination, appellant's counsel used the doctor's testimony to imply that appellant's depression stemmed from preexisting marital difficulties, not from difficulties related to appellant's discrimination claim. By opening the door to the issue of appellee's marital -11- relationship, appellant exposed itself to rebuttal testimony such as that offered. Appellant cannot now complain about that testimony. See McDonald v. Federal Laboratories, Inc., 724 F.2d ___ ________ __________________________ 243, 248 (1st Cir. 1984) (we will not reverse an evidentiary ruling "where the party claiming error invited or elicited the alleged error"). Furthermore, the district judge found appellant's objection to this testimony untimely and therefore unavailing. Indeed, the witness, knowing that his testimony was controversial, paused before proceeding and asked the judge whether to continue. The judge noted that he heard no objections, and therefore told the doctor to proceed. While an objection was raised immediately after this ruling, it was not an abuse of discretion to conclude to reject it. We come now to appellee's contention that the district court erred in not granting a separate recovery for the Title VII claim. Appellee claims that the jury award, $95,000, is legal in character; Title VII, on the other hand, is equitable and carries with it equitable remedies. Appellee believes that he is entitled to both kinds of remedies; essentially, he contends that he is entitled to the $95,000 plus money for front pay, the pay that he would have received had the district court ordered appellant to hire him. We cannot accept this argument. The purpose of damages under Title VII is to make the plaintiff whole. Albemarle Paper _______________ Co. v. Moody, 442 U.S. 405 (1975). The district court is vested ___ _____ -12- with a broad range of equitable powers to carry out this mandate. See 42 U.S.C. 2000e-5(g) (listing "reinstatement or hiring of ___ employees, with or without back pay . . . or any other equitable relief as the court deems appropriate" as available relief). Contrary to appellee's protestations, the district judge did not allow the 1981 verdict to limit his equitable powers under Title VII improperly. He simply found that the jury already gave appellee all that he was entitled to receive. Cf. ___ Wildman v. Lerner Stores Corp., 771 F.2d 605, 616 (1st Cir. 1985) _______ ___________________ (in Age Discrimination in Employment Act suit, the district court has discretion on whether award of front pay is necessary). The jury was presented in the 1981 claim with evidence concerning back pay, front pay, and emotional distress, and instructed to determine the appropriate level of damages for them. These are, essentially, the damages authorized under Title VII. The district court properly concluded that any further relief would have been improper. Affirmed. ________ -13-