USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 96-1229 CHARLES LAROU, Plaintiff, Appellant, v. WESLEY RIDLON, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY AS SHERIFF OF CUMBERLAND COUNTY, Defendant, Appellee.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. D. Brock Hornby, U.S. District Judge] ___________________   ____________________ Before Torruella, Chief Judge, ___________ Cyr and Lynch, Circuit Judges. ______________  ____________________ Stuart Tisdale for appellant. ______________ William R. Fisher, with whom Monaghan, Leahy, Hochadel & Libby _________________ _________________________________ was on brief for appellee.  ____________________ October 28, 1996  ____________________ CYR, Circuit Judge. Appellant Charles LaRou challenges CYR, Circuit Judge. _____________ the district court's summary judgment rulings rejecting his political discrimination claims against Cumberland County (Maine) Sheriff Wesley Ridlon. We affirm the district court judgment. I I BACKGROUND1 BACKGROUND __________ Approximately two years after LaRou joined the Cumberland County Sheriff's Department ("Department") in April 1989, he was designated "Lieutenant, Programs Coordinator" by Sheriff Ridlon. Previously, Ridlon had told LaRou that one of his new responsibilities would be to gather adverse information that might enable Ridlon to fire Sergeant Christopher Muse, whom Ridlon considered a political rival.2 LaRou responded that he would keep his eyes open, but would not participate in a witch hunt. Despite repeated requests from Ridlon, LaRou reported no adverse information about Muse. Ridlon nevertheless appointed LaRou to a captaincy and made him the Administrative Aide respon- sible for inmate programs and officer training (Administrative Aide/Programs) in October 1991. In November 1993, howev- er, all three captains in the Department, including LaRou, were reassigned to newly-created "shift commander" positions. The transfer memo stated that the shift commander assignments were to  ____________________ 1The material facts in genuine dispute are related in the light most favorable to LaRou. Velez-Gomez v. SMA Life Assur. ___________ _______________ Co., 8 F.3d 873, 875 (1st Cir. 1993).  ___ 2In 1990, Muse had gone to Ridlon and informed him that he planned to run against Ridlon in 1994. 2 remain in effect until further notice. LaRou regarded his new night shift commander assignment as a temporary demotion, even though he had been relieved of all training program duties and a Ridlon political supporter had been appointed to succeed him as Administrative Aide/Programs. LaRou was never told that he would or would not be redesignated Administrative Aide/Programs.  In December 1993, Sergeant Muse first informed LaRou that he intended to run against Ridlon for the Democratic nomina- tion for Sheriff. Although LaRou thereafter actively supported the Muse campaign, Ridlon ultimately won both the Democratic nomination and, on June 14, 1994, a second term as Sheriff.  In January 1995, while still serving as the night shift commander, LaRou saw a posting for the position of "Programs Manager," which he believed to be essentially identical to his previous position of Administrative Aide/Programs. LaRou prompt- ly contacted the Cumberland County Personnel Manager, who advised that as far as Cumberland County was concerned LaRou was still the Administrative Aide/Programs. LaRou did not apply for the newly-posted position, however, because he felt that it remained his by right and that he was being forced out by Ridlon in retaliation for supporting Muse in the 1994 political campaign. The district court rejected LaRou's retaliation claim relating to the November 1993 "demotion" to night shift commander as a "chronological impossibility," given the statement by Muse that LaRou had been the first person in the department whom he had told (in December 1993) about his plan to run for Sheriff, ________ 3 which was after LaRou's November 1993 "demotion" to night shift _____ ________ commander.3 Second, the district court ruled that the retalia- tion claim based on the wrongful permanent elimination, in January 1995, of the Administrative Aide/Programs position previously held by LaRou, amounted to a mere restatement of the November 1993 retaliatory "demotion" claim, and hence was not actionable.  II II DISCUSSION DISCUSSION __________ 1. The Standard of Review 1. The Standard of Review ______________________ We review a grant of summary judgment de novo, Velez- __ ____ ______ Gomez, 8 F.3d at 874-75, and will affirm it if "the pleadings, _____ depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As a nonpolicymaking governmental employee, LaRou could only avert summary judgment on his political discrimination claim  by pointing to evidence in the record which, if credited, would permit a rational fact finder to conclude that the challenged per- sonnel action occurred and stemmed from a politically based discriminatory animus.... Without more, a nonmoving plaintiff- employee's unsupported and speculative asser- tions regarding political discrimination will not be enough to survive summary judgment. Rivera-Cotto v. Rivera, 38 F.3d 611, 614 (1st Cir. 1994) (cita- ____________ ______ tions omitted).   ____________________ 3We do not reach this ground. 4  5 2. The 1993 Retaliation Claim  2. The 1993 Retaliation Claim __________________________ LaRou claims on appeal that Ridlon (i) knew Muse planned to oppose Ridlon in the 1994 primary, see supra note 2, ___ _____ (ii) Ridlon originally promoted LaRou with instructions to find grounds for dismissing Muse, and (iii) LaRou ultimately was "demoted" for failing to provide Ridlon with adverse information about Muse and for forming instead a successful working relation- ship with Muse. The 1993 retaliation claim fails, however, even assuming Ridlon caused LaRou to be "demoted" based on a retalia- tory motive, since LaRou was engaged in no protected political activity at the time. The First Amendment protects nonpolicymaking public employees from discrimination based on their political beliefs or affiliation. Branti v. Finkel, 445 ______ ______ U.S. 507 (1980). See also Romero-Barcelo v. Hernandez-Agosto, 75 ___ ____ ______________ ________________ F.3d 23, 34 (1st Cir. 1996). The plaintiff-employee in a politi- cal retaliation case "must bear the threshold burden of producing sufficient direct or circumstantial evidence from which a jury reasonably may infer that [his] constitutionally protected conduct . . . was a `substantial' or 'motivating' factor behind" the adverse employment action taken by the defendant official. Acevedo-Diaz v. Aponte, 1 F.3d 62, 66 (1st Cir. 1993). The ____________ ______ burden then shifts to the defendant official to articulate a nondiscriminatory basis for the adverse employment action, and prove by a preponderance of the evidence that the adverse action would have been taken regardless of any discriminatory political motivation. Id. See also Mt. Healthy City Sch. Dist. Bd. of ___ ___ ____ ____________________________________ 6 Educ. v. Doyle, 429 U.S. 274, 287 (1977).  _____ _____ Under the Mt. Healthy burden-shifting analysis, LaRou's ___________ retaliation claim falters at the outset. In similar circumstanc- es, see Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49 (1st ___ _______________ __________________ Cir. 1990), we rejected a political discrimination claim that an administrator had been constructively discharged from the judi- cial branch of the Commonwealth of Puerto Rico due to his prior association with a former judge who held political views at odds with the defendant officials. We explained that  a politically charged atmosphere . . ., with- out more, provide[s] no basis for a reason- able inference that defendants' employment decisions about plaintiff were tainted by _________ their disregard of plaintiff's first amend- ___________ ment rights. Absent a constitutionally pro- tected aspect, a "close relationship" with a third party is insufficient . . . notwith- standing that consideration of the third ___ _____ party's political beliefs may have entered _______ _________ _______ into the decisionmaking calculus. Id. at 58 (citation omitted). As we stressed in Correa-Martinez, ___ _______________ the plaintiff is required to show that "a causal connection exists linking defendants' conduct, as manifested in the adverse employment decision, to plaintiff's politics." Id. See also ___ ___ ____ Aviles-Martinez v. Monroig, 963 F.2d 2, 5 (1st Cir. 1992) (plain- _______________ _______ tiff-employee must show causal connection between his political affiliation and the adverse treatment).  LaRou claims he was "demoted" to night shift commander because he did not abide by Ridlon's instructions to gather information which would enable Ridlon to fire Muse. LaRou does not claim, however, nor does the record indicate, that LaRou 7 provided Muse with political support prior to his alleged "demo- tion" in November 1993. Although Ridlon and Muse had had politi- cal differences as early as 1990, as of November 1993 Ridlon and LaRou had not; and LaRou does not claim that he then knew Muse intended to oppose Ridlon.4 Thus, for aught that appears in the record, LaRou's relationship with Muse in November 1993 was not political. LaRou himself asserts that he chose not to provide Ridlon with adverse information about Muse because he and Muse had developed a successful professional relationship, which resulted in many noteworthy advances in officer-training proce- dures. Conspicuously absent is any suggestion that LaRou was motivated by Muse's political plans, affiliation, or beliefs.5 Since the record does not disclose that LaRou was engaged in any protected political activity, the alleged "demotion" in November  ____________________ 4At his deposition, LaRou was asked whether he and Muse had ever discussed Muse's political campaign prior to LaRou's "demo- tion" in November, 1993. After stating that it was "most likely" that such a conversation occurred, LaRou explained: I was moved out in November of '93 and that was very early - very early. And if there was ever any mention of it, it certainly wasn't a strategic mentioning because there was no strategy at that time. That's very early. So there may have been a sideline comment, there may have been a joke made. I really couldn't say. Nothing jumps up at me of a conversation or anything, but I wouldn't doubt that it happened. It could have hap- pened. LaRou Dep. at 88.  5In his affidavit, LaRou indicates that he undertook to scrutinize Muse's job performance for Ridlon, but later developed a close working relationship with Muse.  8 1993 did not give rise to a cognizable political discrimination claim even assuming Ridlon's adverse employment action was based on his political differences with Muse, and he took those differ- ences out on LaRou. See Correa-Martinez, 903 F.2d at 58.  ___ _______________ 3. The 1995 Job Posting 3. The 1995 Job Posting ____________________ LaRou attempts to assert a discrete retaliation claim in connection with the January 1995 posting of the "Programs Manager" position. Up until that time, LaRou says, he had believed that his November 1993 "demotion" to night shift com- mander was merely temporary, and that he would be returned to his former position some day. He adds that the position title was changed at the time of the posting in January 1995 to justify his final removal, and that his "permanent" loss of the position in 1995 was in retaliation for his support of Muse's 1994 bid for Sheriff. The 1995 retaliation claim nonetheless fails because LaRou was subjected to no cognizable adverse employment action as a result of the simple posting of the "Programs Manager" position in January 1995. See Connell v. Bank of Boston, 924 F.2d 1169, ___ _______ _______________ 1179 (1st Cir.), cert. denied, 501 U.S. 1218 (1991)6 ("Most cases ____ ______ involving a retaliation claim are based on an employment action  ____________________ 6Although Connell involved ADEA claims rather than 1983, _______ its analysis is persuasive. The fundamental meaning of "adverse employment action" should remain constant regardless of the particular enabling statute, given their similar anti- discriminatory purpose. Indeed, in Blackie v. State of Maine, 75 _______ ______________ F.3d 716, 725 (1st Cir. 1996), a case involving the Fair Labor Standards Act, this court observed generally that "[i]n a retaliation case, as in virtually any other discrimination case premised on disparate treatment, it is essential for the plain- tiff to show that the employer took a materially adverse employ- ment action against him." 9 which has an adverse impact on the employee, i.e., discharge, demotion, or failure to promote."); see also Rutan v. Republican ___ ____ _____ __________ Party of Illinois, 497 U.S. 62, 75 (1990); Welsh v. Derwinski, 14 _________________ _____ _________ F.3d 85, 86 (1st Cir. 1994).  We first examine the particular retaliatory action relied upon by the plaintiff employee to determine whether it had the requisite adverse effect. Id.; cf. also Blackie v. State of __ __ ____ _______ ________ Maine, 75 F.3d 716, 725 (1st Cir. 1996) (noting that "determining _____ whether an action is materially adverse necessarily requires a case-by-case inquiry.") (Fair Labor Standards Act case). Even assuming, without deciding, that the generous definition of "adverse employment action" propounded in Blackie likewise _______ applies here, LaRou cannot bring the present claim within it.7 Under Blackie, LaRou might make out a retaliation claim were he _______ to demonstrate that Ridlon had refused to promote (or transfer) him to the Programs Manager position posted in 1995, or refused to consider him for the position despite a duty to do so.  Although LaRou contends that the mere posting of the  ____________________ 7In Blackie, we stated: _______ Typically, the employer must (1) take some- thing of consequence from the employee, say, by discharging or demoting her, reducing her salary, or divesting her of significant re- sponsibilities; or (2) withhold from the employee an accoutrement of the employment relationship, say, by failing to follow a customary practice of considering her for promotion after a particular period of ser- vice. Id. (citations omitted). __ 10 Programs Manager position in 1995 adversely affected his employ- ment because at the time he still "believed" he would be returned to his prior position as Administrative Aide/Programs, he offers no evidence which would enable a rational trier of fact to find that this "belief" was based on anything but conjecture. Simi- larly, he proffers no evidentiary foundation for the stated belief that his transfer to shift commander in November 1993 was temporary.  LaRou baldly attests in his affidavit that he was told the transfer to shift commander was to be temporary, without identifying, either by name or position, the source of the hearsay statement. Thus, the unattributed statement is incompe- tent, see Fed. R. Civ. P. 56(e) (affidavit "shall set forth such ___ facts as would be admissible in evidence"), since it is inadmis- sible hearsay, see Fed. R. Evid. 801(d)(2) (out-of-court state- ___ ment offered for truth of matter asserted not hearsay if attrib- utable to party-opponent or agent). See also Woodman v. ___ ____ _______ Haemonetics Corp., 51 F.3d 1087, 1094 (1st Cir. 1995). _________________ The only competent record evidence indicates that the November 1993 "demotion" was permanent. According to Frank Amoroso, Cumberland County Jail Administrator, the 1993 realign- ment of the three captains was part of an overarching plan. The Administrative Aide/Programs position was to be eliminated and with it one captaincy and replaced with a Programs Manager position. Moreover, Amoroso explained the plan to the three captains, including LaRou, at a staff meeting, and requested 11 their input. Thus, LaRou proffers no competent evidence to remove the 1995 job posting claim from "the realm of speculative, general allegations." See Kauffman v. Puerto Rico Telephone Co., ___ ________ _________________________ 841 F.2d 1169, 1173 n.5 (1st Cir. 1988).  LaRou asserts that he called the personnel director after seeing the Programs Manager position posting, and was told that, as far as Cumberland County was concerned, he was still the Administrative Aide/Programs. This statement cannot help LaRou, however, since he concededly knew that the newly posted Programs __________ ____ ____ ___ _____ ______ ________ Manager position encompassed his former position of Administra- _______ ________ ___________ ___ ______ ________ tive Aide/Programs, yet he elected not to apply for the newly ___ __ _______ ___ __ _____ posted position. In these circumstances, reliance on the person- nel director's statement, indicating merely that no official change of status had been noted in LaRou's personnel file, is patently insufficient to generate a trialworthy issue.  Absent some competent evidentiary basis for the stated belief that the 1993 transfer was merely temporary, at the very least LaRou plainly bore the responsibility to apply for the posted position which he knew encompassed his former position. Failing which, we are at a loss to understand how the 1995 posting alone could be found to have been "retaliatory." Even assuming the newly posted position were LaRou's by right, he does not explain how Ridlon could be found to have acted out of a retaliatory motive simply in posting the position in 1995, absent any evidence that Ridlon knew LaRou claimed his former position or was interested in the newly posted position. Without such 12 evidence, it was incumbent upon LaRou to alert the appropriate decisionmakers to his interest in, or claim to, the posted position.8 Thus, LaRou failed to generate a trialworthy claim that Ridlon harbored an actionable retaliatory motive in posting the programs manager position in 1995.  Finally, given the unchallenged evidence that LaRou elected not to apply for the newly posted position in 1995, he cannot point to a plausible dispute that Ridlon engaged in an "adverse employment action" simply by posting the programs manager position. See Boarman v. Sullivan, 769 F. Supp. 904, ___ _______ ________ 910-11 (D.Md. 1991); cf. also Sinai v. New England Tel. and Tel. __ ____ _____ ___ _______ ____ ___ ____ Co., 3 F.3d 471, 474 (1st Cir. 1993), cert. denied, 115 S. Ct. ___ _____ ______ 597 (1994) (Title VII); Sherpell v. Humnoke Sch. Dist. No. 5 of ________ _______ ____ _____ ___ _ __ Lonoke Cty., 750 F.Supp. 971, 980 (E.D. Ark. 1990), aff'd, 985 ______ ____ _____ F.2d 566 (8th Cir. 1991) (finding that "there could be no `ad- verse employment action' by defendant until plaintiff applied for a job") (Title VII discrimination and retaliation claims). We accordingly hold that the mere posting of a position does not constitute an "adverse employment action" even though the posi- tion posted is known to encompass a prior position from which the plaintiff was demoted or transferred, provided the plaintiff  ____________________ 8Although LaRou claims to have sent a letter to the person- nel director explaining why he was not applying for the newly posted position, it is not included in the record on appeal. See ___ Real v. Hogan 828 F.2d 58, 60 (1st Cir. 1987)("If [the record] ____ _____ proves inconclusive, it is the appellant who must bear the brunt of an insufficient record on appeal."). See also Moore v. ___ ____ _____ Murphy, 47 F.3d 8, 10-11 (1st Cir. 1995); United States v. ______ ______________ Mottolo, 26 F.3d 261, 264 n.3 (1st. Cir. 1994). _______ 13 received proper notice of the posted position and elected not to apply. The district court judgment is affirmed, without costs ___ ________ _____ ________ __ _________ _______ _____ to either party.  __ ______ _____ 14