**Eric H. DERAVIN, III, Plaintiff–Appellant,**

v.

**Bernard KERIK, Commissioner, and New York City Department of Corrections, Defendants–Appellees.**

**Docket No. 02–7729.**

United States Court of Appeals, Second Circuit.

Argued June 27, 2003.

Decided July 11, 2003.

Gregory S. Lisi, Rockville Centre, for Plaintiff–Appellant.

Paul L. Herzfeld, (Michael A. Cardozo, Corporation Counsel for the City of New York, on the brief, and Francis F. Caputo, of counsel), New York, for Defendants–Appellees.

Before STRAUB and POOLER, Circuit Judges, and HURD, District Judge.*

STRAUB, Circuit Judge.

Plaintiff Eric H. Deravin, III ("Deravin"), a former employee of defendant New York City Department of Corrections ("DOC") asserts claims of race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* Deravin alleges that defendant Bemard Kerik ("Kerik"), the former Commissioner of the DOC, blocked his promotion to the position of Deputy Warden, because Deravin is African–American, and because Deravin successfully defended himself against sexual harassment charges filed by Jeanette Pinero ("Pinero"), a DOC corrections officer whom Deravin contends was romantically involved with Kerik.

The United States District Court for the Southern District of New York (Kimba M. Wood, *Judge* ) dismissed Deravin's claims pursuant to Fed.R.Civ.P. 12(c). The District Court concluded that Deravin's race discrimination claim had not been adequately exhausted, because the claim was not reasonably related to the national ori-

gin and retaliation claims originally raised in Deravin's Equal Employment Opportunity Commission ("EEOC") complaint. As for Deravin's retaliation claim, the District Court ruled that "defending oneself against charges of discrimination" does not qualify as protected activity under Title VII. On appeal, Deravin challenges both of these rulings. Because we find that Deravin administratively exhausted his race discrimination claim, and, further, because we hold today that defending oneself against charges of discrimination by testifying in a Title VII proceeding qualifies as protected activity under 42 U.S.C. § 2000e–3(a), we vacate the judgment of the District Court and remand for further proceedings.

I.

Deravin has been an employee of the DOC for over twenty years. In October 1989, Deravin was promoted to the position of Captain and, in August 1996, Deravin was again promoted to the position of Assistant Deputy Warden. In January 1998, as soon as he became eligible, Deravin applied for but was denied further promotion to the position of Deputy Warden. Between January 1998 and April 2000, Deravin applied five more times for promotion to Deputy Warden. Although he was recommended and approved each time by the chief of his department, Deravin's successive applications for promotion were also unsuccessful. Deravin contends that Kerik deliberately blocked his promotion to Deputy Warden, and that Kerik instead promoted far less qualified applicants, including applicants with only high school diplomas or GEDs while Deravin had a Ph.D. in Criminal Justice Manage-

---

* The Honorable David N. Hurd, Judge of the United States District Court for the Northern District of New York, sitting by designation.

ment as well as a Master's Degree in Public Administration.

Deravin alleges that Kerik refused to promote him for two discriminatory reasons: (1) because there was a preferential policy within the DOC to promote white employees, and Kerik did not want to promote an African–American employee to a position of authority and responsibility; and (2) because Deravin had successfully defended himself against false sexual harassment charges brought by Pinero, a DOC officer whom Kerik had purportedly dated.[1] After Deravin filed a complaint with the EEOC, he was finally promoted to the position of Deputy Warden, on his sixth try, in June 2000.

In his EEOC complaint, Deravin checked only the boxes marked "retaliation" and "national origin" as the grounds for his discrimination claim. The written description of claim also focuses on Kerik's alleged retaliation as well as on the allegedly preferential treatment given to DOC employees who are members of the Emerald Society due to their "Irish–American Status." Deravin explains: "If you look at those members who have been given promotions and preferential treatment, you will see the majority are members of the Emerald Society. Both the retaliation I have experienced as well as this ongoing preferential treatment is in violation of the Civil Rights Act of 1964."

After receiving a notice of charge from the EEOC, the DOC investigated Deravin's claims. In June 2000, the DOC issued a position statement denying Deravin's claims of discrimination. As part of its investigation, the DOC reviewed a list of all applicants for promotion to the position of Deputy Warden from January 1998 to June 2000, specifying the race of each applicant. The DOC noted at the conclusion of its analysis, that out of the successful candidates:

> three (3) were male Hispanics, seven (7) were African–American males, four (4) were African–American females, four (4) were male Italians, eight (8) were male Irish, and one (1) was male Greek. There were a total of twenty-seven promotions. There is no disproportion in promotions of Irish descent as alleged by the complainant. Therefore, the allegations made by the complainant that members of the Emerald Society were given preferential treatment and promotions are unsubstantiated.

The EEOC issued Deravin a right-to-sue letter in August 2000, and Deravin filed this present action *pro se* in October 2000, asserting claims of race discrimination and retaliation under Title VII. Defendants subsequently moved to dismiss the complaint. The matter was referred by the District Court to Magistrate Judge Kevin N. Fox who recommended that defendants' motion for judgment on the pleadings be granted.

By written order issued on May 20, 2002, the District Court adopted the recommendation of the Magistrate Judge. The District Court agreed that Deravin had failed to administratively exhaust his race discrimination claim, because "nothing in the [EEOC] complaint suggests that defendants discriminated against plaintiff on account of his race." The District Court also rejected Deravin's explanation that the EEOC counselor who helped him fill out the complaint form erroneously failed to specify race as a basis for Dera-

---

1. Both the DOC EEO office as well as the New York State Division of Human Rights investigated Pinero's charges against Deravin. Both concluded that there was no evidence of any harassment or discrimination by Deravin. Deravin contends that he testified in his own defense as part of both investigations.

vin's discrimination claim. Although Deravin submitted two letters dated April 4, 2001 and May 7, 2001 in which he requested that the EEOC rectify the alleged administrative error, the District Court characterized the May 7, 2001 letter as "a disingenuous, post-hoc attempt to remedy the deficiencies in the administrative complaint." The District Court noted that the May 7, 2001 letter was sent months after Deravin received his right to sue letter from the EEOC as well as after defendants filed their answer notifying Deravin that they intended to argue that his claims "are barred to the extent that [the] allegations were not contained in his EEOC charge." The District Court also noted that there was no evidence that the letter had actually been sent to the EEOC,[2] nor was there any evidence confirming that Deravin had worked with an EEOC counselor in filing his administrative complaint.

In analyzing Deravin's retaliation claim, the District Court further agreed with the Magistrate Judge, concluding that defending oneself against charges of discrimination does not qualify as protected activity under Title VII. The District Court reasoned: "To be protected activity, plaintiff himself must have taken some action to protest or oppose illegal discrimination. Because plaintiff has not alleged in the Complaint that he engaged in any such activity, he cannot make out a claim for retaliation, even if the Court assumes all inferences in his favor."

Accordingly, the District Court dismissed Deravin's claims, and this timely appeal followed.

## II.

■ We review *de novo* the dismissal of claims pursuant to a Rule 12(c) motion for judgment on the pleadings, "accepting the allegations in the amended complaint as true and drawing all reasonable inferences in favor of the [plaintiff]." *Patel v. Searles*, 305 F.3d 130, 134–35 (2d Cir. 2002), *cert. denied*, —— U.S. ——, 123 S.Ct. 1486, 155 L.Ed.2d 227 (2003). A complaint may be dismissed under Rule 12(c) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 135 (internal quotation marks and citation omitted). This standard applies with particular strictness where the plaintiff files a *pro se* complaint alleging civil rights violations. *See id.; Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir.2002). Indeed, this Court has repeatedly warned that "the pleading requirements in discrimination cases are very lenient, even *de minimis.*" *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir.1998). It is with these principles in mind that we examine plaintiff's claims.

## III.

■ As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC. *See Fitzgerald v. Henderson*, 251 F.3d 345, 358–59 (2d Cir.2001), *cert. denied*, 536 U.S. 922, 122 S.Ct. 2586, 153 L.Ed.2d 776 (2002); *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir.2001) (per curiam). "We have recognized, however, that claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency." *Legnani*, 274 F.3d at 686 (internal quotation marks and citation omitted). "A claim is considered reasonably related if the con-

**2.** It is unclear from the record why the District Court focused solely on the May 7, 2001 letter without discussing Deravin's earlier April 4, 2001 letter.

duct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Fitzgerald*, 251 F.3d at 359–60 (internal quotation marks and citation omitted). This exception to the exhaustion requirement "is essentially an allowance of loose pleading" and is based on the recognition that "EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [he] is suffering." *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402 (2d Cir.1993), *superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir.1998).[3]

■ In determining whether claims are reasonably related, the focus should be "on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 637 (9th Cir.2002); *see also Alonzo v. Chase Manhattan Bank, N.A.*, 25 F.Supp.2d 455, 458 (S.D.N.Y.1998) ("[I]t is the substance of the charge and not its label that controls."). Because "[a]n assertion of racial bias is conceptually distinct from a claim of discrimination on the basis of national origin," raising a national origin claim before the EEOC does not automatically suffice to alert the agency to investigate incidences of racial discrimination.[4] *Dixit v. City of N.Y.*

*Dep't of Gen. Servs.*, 972 F.Supp. 730, 734 (S.D.N.Y.1997). However, courts have also recognized that race and national origin discrimination claims may substantially overlap or even be indistinguishable depending on the specific facts of a case. *See, e.g., Sinai v. New England Tel. and Tel. Co.*, 3 F.3d 471, 475 (1st Cir.1993) ("[R]ace and national origin discrimination may present identical factual issues when a victim is 'born in a nation whose primary stock is one's own ethnic group' ... [and thus] in certain circumstances ... national origin and race discrimination may overlap.") (quoting *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 614, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987) (Brennan, J., concurring)), *cert. denied*, 513 U.S. 1025, 115 S.Ct. 597, 130 L.Ed.2d 509 (1994); *Bullard v. OMI Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir. Unit B 1981) ("In some contexts, national origin discrimination is so closely related to racial discrimination as to be indistinguishable.") (internal quotation marks and citation omitted); *cf. Dennis v. Pan Am. World Airways, Inc.*, 746 F.Supp. 288, 291 (E.D.N.Y.1990) (acknowledging that "[r]ace ... may sometimes be correlated with national origin because of certain historical or demographic facts").

■ In this case, the District Court correctly observed that Deravin's EEOC complaint fails to expressly allege race discrimination or use terms suggestive of a potential confusion between the concepts of race and nationality. *Cf. Dixit*, 972

---

**3.** We have also recognized two other types of claims that are reasonably related to the claims asserted in an EEOC complaint: (1) a claim "alleging retaliation by an employer against an employee for filing an EEOC charge," and (2) a claim where the plaintiff "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Butts*, 990 F.2d at 1402–03.

**4.** The EEOC "defines national origin discrimination broadly as including, but not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group." 29 C.F.R. § 1606.1.

F.Supp. at 734–35 (race and national origin discrimination claims were reasonably related where plaintiff identified himself as an "Asian Indian," a term suggestive of both race and national origin, in his EEOC complaint); *Alonzo,* 25 F.Supp.2d at 460 (concluding that race discrimination claim was reasonably related to national origin claim "[d]ue to [plaintiff's] pronouncement that he was discriminated against because he is a Hispanic, because it has not been established that the designation of being an Hispanic precludes a claim of racial discrimination, and given the uncertainty among courts as to whether 'Hispanic' is better characterized as a race or a national origin"). Indeed, the EEOC complaint does not even reveal that Deravin is African–American. Nonetheless, precise pleading is not required for Title VII exhaustion purposes, *Alvarado v. Bd. of Tr. of Montgomery Cmty. Coll.,* 848 F.2d 457, 460 (4th Cir.1988), and even in the absence of an express linkage between race and national origin, the specific facts alleged by a plaintiff in his or her EEOC complaint may suggest both forms of discrimination, so that the agency receives adequate notice to investigate discrimination on both bases.

For example, read liberally, allegations by an African–American employee that employees of Irish descent are receiving preferential treatment implicitly suggests some form of potential racial discrimination in addition to an illegitimate preference premised on national origin. Significantly, upon reviewing Deravin's EEOC complaint, the DOC itself recognized as much, for although it analyzed comparable white candidates in terms of ethnicity, it also specifically noted the number of successful Hispanic and African–American candidates. In such circumstances, because racial categories may overlap significantly with nationality or ethnicity, "the line between discrimination on account of race and discrimination on account of national origin may be so thin as to be indiscernible," *Adames v. Mitsubishi Bank, Ltd.,* 751 F.Supp. 1548, 1559 (E.D.N.Y. 1990) (quoting *Enriquez v. Honeywell, Inc.,* 431 F.Supp. 901, 904 (W.D.Okla. 1977)), or at least sufficiently blurred so that courts may infer that both types of discrimination would fall within the reasonable scope of the ensuing EEOC investigation for exhaustion purposes.[5]

Where the line between national origin discrimination and racial discrimination is difficult to trace, courts have warned that "[a]n attempt to make such a demarcation before both parties have had an opportunity to offer evidence at trial is inappropriate." *Bullard,* 640 F.2d at 634–35. Similarly, courts should not attempt to draw overly fine distinctions between race and national origin claims as part of the threshold exhaustion inquiry prior to the full development of a plaintiff's claims, given the potential overlap between the two forms of discrimination, and the "loose pleading" which is permitted in the EEOC complaint, *see Butts,* 990 F.2d at 1402.

Looking to the specific facts of this case, we conclude that the absence of an explicit reference to race discrimination in Deravin's EEOC complaint is not dispositive,

---

**5.** Although there may be fundamental conceptual differences between race and national origin discrimination "[p]rejudice is as irrational as is the selection of groups against whom it is directed," *Manzanares v. Safeway Stores, Inc.,* 593 F.2d 968, 971 (10th Cir. 1979) – thus we cannot simply assume that employment discrimination invariably fits into neat, clearly distinct legal categories. *Cf. Sinai,* 3 F.3d at 475 (explaining that while race and national origin discrimination are not identical, "national origin discrimination could be used [by a jury], together with other evidence, to arrive at a conclusion vis-a-vis race discrimination").

because an allegation of preferential treatment for Irish–American employees fairly encompasses a claim of discrimination against minority employees. While there may be a conceptual difference between simply favoring white employees and favoring a distinct subset of white Irish–Americans, Deravin's allegations were sufficient to alert the EEOC to look for potential race discrimination. In sum, because a claim of race discrimination could reasonably be expected to grow out of Deravin's EEOC complaint, Deravin adequately exhausted his race discrimination claim.

██ Moreover, in this case, there is an additional reason why dismissal of Deravin's race discrimination claim was inappropriate. Regardless of the actual content of his EEOC complaint, Deravin also alleges that the failure to specify race as a basis for his discrimination claim can be blamed on the EEOC counselor who helped him fill out the complaint form. *See B.K.B. v. Maui Police Dep't,* 276 F.3d 1091, 1102 (9th Cir.2002) (concluding that a plaintiff may present evidence of agency error as evidence that her Title VII discrimination claim was properly exhausted). While the District Court identified several reasons to doubt Deravin's story, there is also evidence in this case that verifies Deravin's claim of administrative error. For example, the EEOC notice of charge fails to list retaliation as an independent basis for Deravin's discrimination claim, although Deravin undisputedly alleged retaliation in his initial administrative complaint. While we acknowledge that Dera-

vin's claim of administrative error may ultimately prove to be non-credible, the District Court was not entitled to make an adverse credibility finding on a Rule 12(c) motion. *See generally Patel,* 305 F.3d at 134–35. Accepting *all* of Deravin's allegations as true, dismissal for failure to meet Title VII's administrative exhaustion requirement was inappropriate at this early stage in the litigation, and we therefore vacate the District Court's dismissal of Deravin's race discrimination claim.

**IV.**

The District Court also rejected Deravin's retaliation claim, concluding that defending oneself against charges of discrimination is not protected activity within the meaning of Title VII. However, Title VII's anti-retaliation provision is broadly drawn. Section 704(a) of Title VII makes it unlawful to retaliate against an employee, "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or *participated in any manner* in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a) (emphasis added).[6]

As courts have consistently recognized, the explicit language of § 704(a)'s participation clause is expansive and seemingly contains no limitations. *See, e.g., Clover v. Total Sys. Servs., Inc.,* 176 F.3d 1346, 1353 (11th Cir.1999) ("The words 'participate in any manner' express Congress' intent to confer 'exceptionally broad protection'

---

**6.** Although the District Court reasoned that, "[t]o be protected activity, plaintiff himself must have taken some action to protest or oppose illegal discrimination," section 704(a) has two separate clauses: an opposition clause as well as an independent participation clause. *See Glover v. South Carolina Law Enforcement Div.,* 170 F.3d 411, 413 (4th Cir.

1999). As Deravin's claim of retaliation is best understood as falling under § 704(a)'s participation clause, it should not be analyzed solely under the narrower opposition clause. *See Hashimoto v. Dalton,* 118 F.3d 671, 680 (9th Cir.1997), *cert. denied,* 523 U.S. 1122, 118 S.Ct. 1803, 140 L.Ed.2d 943 (1998).

upon employees covered by Title VII."); *see also Johnson v. Univ. of Cincinnati,* 215 F.3d 561, 582 (6th Cir.), *cert. denied,* 531 U.S. 1052, 121 S.Ct. 657, 148 L.Ed.2d 560 (2000); *Glover v. South Carolina Law Enforcement Div.,* 170 F.3d 411, 414 (4th Cir.1999). As the Supreme Court has noted, "[r]ead naturally, the word 'any' has an expansive meaning," and thus, so long as "Congress did not add any language limiting the breadth of that word," the term "any" must be given literal effect. *United States v. Gonzales,* 520 U.S. 1, 5, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997).

 Relying on the explicit language of § 704(a), the Eleventh Circuit has held that even involuntary participation in Title VII proceedings by an employee accused of sexual harassment qualifies as protected activity. *See Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1185–89 (11th Cir.1997). We find the reasoning and analysis of *Merritt* persuasive and note that the EEOC adopts the same position. *See* EEOC Compliance Manual § 8–II(C)(1) n. 24 (May 20, 1998) (citing *Merritt* and explaining that "[t]he participation clause protects those who testify in an employment discrimination case about their own discriminatory conduct, even if such testimony is involuntary").[7] We accordingly hold that defending oneself against charges of discrimination – to the extent that such defense involves actual participation in a Title VII proceeding or investigation – is "protected activity" within the scope of § 704(a) based on a plain reading of the statute's text. *Cf. McMenemy v. City of Rochester,* 241 F.3d 279, 283 (2d Cir.2001) (refusing to adopt a limitation which was not supported by the plain language of Title VII's anti-retaliation provision).

 Although we adopt *Merritt*'s reasoning and find no need to reiterate the cogent analysis of the Eleventh Circuit, we pause here to emphasize two points. First, while it is indisputedly true that we must interpret Title VII's anti-retaliation provision in light of Title VII's overall remedial purpose, *see generally Robinson v. Shell Oil Co.,* 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (2001), and while we generally avoid statutory interpretations that would result in absurd or plainly inconsistent results, *see Yerdon v. Henry,* 91 F.3d 370, 376 (2d Cir.1996), we discern no absurdity or necessary inconsistency in barring retaliation based on an accused harasser's *participation* in Title VII proceedings. "Activities under the participation clause are essential to the machinery set up by Title VII." *Laughlin v. Metro. Washington Airports Auth.,* 149 F.3d 253, 259 n. 4 (4th Cir. 1998) (internal quotation marks and citation omitted). Because the primary purpose of Title VII's anti-retaliation clause is to maintain unfettered access to Title VII's remedial mechanisms, *see McMenemy,* 241 F.3d at 284, it may well advance the remedial purpose of Title VII to shield all participation, including participation by an employee accused of illegal discrimination, to ensure the overall integrity of the administrative process and encourage truthful testimony. *See Merritt,* 120 F.3d at 1188 ("Congress could well have decided that encouraging truthful testimony by even the sexual harassers themselves was important enough to vindication of Title VII claims to justify whatever deleterious effect [such protection] might have on the vigor with which

7. Such informal agency interpretations are entitled to deference so long as they are persuasive. *See McMenemy v. City of Rochester,* 241 F.3d 279, 284 (2d Cir.2001) (relying on interpretation contained in EEOC Compliance Manual, because the EEOC's interpretation was consistent with both the plain language of Title VII as well as the remedial purpose of Title VII's anti-retaliation provision).

employers discipline guilty employees."); *Glover*, 170 F.3d at 414 ("Section 704(a)'s protections ensure not only that employers cannot intimidate their employees into foregoing the Title VII grievance process, but also that investigators will have access to the unchilled testimony of witnesses.").[8]

 Second, our interpretation of § 704(a) should not be read as prohibiting employers from legitimately disciplining employees who engage in discriminatory conduct. We emphasize that Title VII only protects the specific act of *participating* in administrative proceedings – not the *underlying conduct* which is being investigated. *See Merritt*, 120 F.3d at 1188 (noting that an employer may unquestionably impose discipline, "including termination, on any employee who sexually harasses or otherwise discriminates against other employees"); *cf. Matima v. Celli*, 228 F.3d 68, 79 (2d Cir.2000) ("An employer does not violate Title VII when it takes adverse employment action against an employee to preserve a workplace environment that is governed by rules, subject to a chain of command, free of commotion, and conducive to the work of the enterprise."); *Laughlin*, 149 F.3d at 259 n. 3 ("It is black letter law that illegal actions are not protected activity under Title VII.") Thus, while an employer may not retaliate against an employee solely because the employee participated in a Title VII proceeding, an employer may discipline an employee if its investigation reveals culpable conduct.

 In conclusion accepting the truth of Deravin's allegations – that Kerik blocked his promotion in retaliation for

Deravin's testimony in the investigation of Pinero's sexual harassment charges—we hold that Deravin has alleged that he engaged in protected activity within the meaning of § 704(a)'s participation clause and therefore vacate the District Court's dismissal of Deravin's retaliation claim.

### V.

For the reasons stated above, we VACATE the judgment of the District Court and remand for further proceedings consistent with this opinion.[9]

---

**8.** Indeed, truthful testimony by the employee actually accused of wrongdoing may serve as the best evidence in support of a claim of illegal discrimination.

**9.** Because we vacate the judgment of the District Court on these grounds, we express no view on the other arguments raised by the parties which were not reached by the District Court.