Brenda K. WOODMAN, Plaintiff,

v.

WWOR–TV, INC., News America, Inc., and Fox Television Stations, Inc., Defendants.

No. 02 Civ.9279 DLC.

United States District Court, S.D. New York.

Nov. 24, 2003.

Michiel A. Bloemsma, Menaker & Hermann LLP, New York, New York, for Plaintiff.

Michael Starr, Adam J. Heft, Hogan & Hartson LLP, New York, New York, for Defendants.

*OPINION AND ORDER*

COTE, District Judge.

Brenda K. Woodman ("Woodman") filed this lawsuit on November 20, 2002, alleging that WWOR–TV, Inc. ("WWOR–TV"), News America, Inc. and Fox Television Stations, Inc. ("Fox Television") (collectively, "Defendants") discriminated against her in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a), New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, and New York City Human Rights Law ("NYCHRL"), New York City Admin.

Code § 8–107, when they terminated her employment. Following discovery limited to the issue of Defendants' knowledge of Woodman's age, the Defendants have moved for summary judgment on the ground that they had no knowledge of Woodman's age and therefore cannot be found to have committed intentional age discrimination. For the following reasons, the motion is granted.

### Background

The following facts are undisputed or as shown by the plaintiff, unless otherwise noted. Woodman was employed by companies affiliated with Chris Craft Industries, Inc. ("Chris–Craft"), a television broadcasting conglomerate, from 1993 through 2001. Most recently, she was employed from January 2000 to July 2001 as the General Manager of Sales for WWOR, a television station located in New Jersey, which was owned by a subsidiary of Chris–Craft. Woodman worked primarily from WWOR's New York City office.

On August 13, 2000, The News Corporation Limited ("News Corporation") entered into an agreement with Chris–Craft and two of its subsidiaries to acquire Chris–Craft by merger (the "Merger"). As a consequence of the Merger, News Corporation acquired ten television stations, including WWOR, which would be operated by Fox Television, a News Corporation subsidiary. Three of these acquisitions, including that of WWOR, created what are known as duoplies, that is, the ownership of two television stations in the same market. Fox Television's station in the New York market was WNYW.

Duoplies create the potential to coordinate the advertising sales of two television stations within a single market. Fox Television intended to create one integrated sales force to offer advertising spots and sales opportunities for its stations in the New York City market and to eliminate positions that became redundant after the merger. As part of this strategy, Fox Television's business plan called for a single head of sales to oversee operations for the two stations comprising the New York duoply. Defendants chose Debbie von Ahrens ("von Ahrens"), the General Sales Manager of WNYW, to take over as General Sales Manager for the duoply in New York.

On July 27, 2001, Woodman received a letter from Herbert J. Siegel, Chris–Craft's Chairman of the Board, terminating her employment as of July 30, the day before the Merger closed. In order to receive her severance package of $340,953.85, Woodman signed a Release on July 27 waiving "any" employment claims against the Chris–Craft subsidiary that owned WWOR. The release did not mention the ADEA. On the date of her discharge, Woodman was 61 years old. During her employment, she spoke openly about her age, which was rare for a sales manager in the industry.

The termination of Woodman's employment was executed by Chris–Craft at News Corporation's request. The individuals who participated in the decision to terminate Woodman's employment, or provided information to those individuals, were Fox Television executives Elisabeth J. Swanson ("Swanson"), Senior Vice President/Chief Financial Officer; Thomas R. Herwitz, President/Station Operations; James Burke, President/Sales; Jean C. Fuentes ("Fuentes"), Senior Vice President/Human Resources; Richard Slenker, Jr., Executive Vice President/Engineering and Operations; James Clayton, then Vice President and General Manager of WNYW; Gary DeLorenzo, Vice President/Finance (collectively, "Fox Executives"); and lawyers for Chris–Craft and the Defendants. It is undisputed that none of these individuals had ever met,

seen, or spoken to Woodman prior to the Merger.[1]

Following the termination of Woodman's employment, von Ahrens assumed the responsibilities of the General Sales Manager at both WNYW and WWOR. She was approximately twenty years younger than Woodman at the time of the Merger.

On January 8, 2002, Woodman filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that she had been fired because of her age. While the EEOC found no evidence to support Woodman's claim, it also determined that the Release that Woodman signed violated the Older Workers Benefit Protection Act ("OWBPA") and EEOC regulations.

### Discussion

Summary judgment may not be granted unless the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of the movant's pleadings. Rule 56(e), Fed.R.Civ.P.; *accord Burt Rigid Box, Inc. v. Travelers Property Cas. Corp.*, 302 F.3d 83, 91 (2d Cir.2002).

### Disparate Treatment Claim

The ADEA protects workers over the age of forty by making it unlawful for an employer to discharge an employee "because of such individual's age." 29 U.S.C. § 623(a)(1). The plaintiff bears the initial burden of establishing a prima facie case of disparate treatment. *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). A plaintiff satisfies this burden by showing: (1) that at the relevant time she was a member of the protected class; (2) that she was qualified for her job; (3) that she was discharged by her employer; and (4) the discharge occurred under circumstances giving rise to an inference of discrimination. *Roge v. NYP Holdings*, 257 F.3d 164, 168 (2d Cir.2001) (relying on the methodology set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). A plaintiff's burden in presenting prima facie evidence of discrimination is *de minimis*. *Abdu–Brisson v. Delta Air Lines*, 239 F.3d 456, 467 (2d Cir.2001). When prima facie evidence is present, a presumption of discrimination exists. *Id.* at 456. Because of the similarity of the elements of age discrimination claims brought under the NYSHRL and NYCHRL to claims brought under the ADEA, all three claims are subject to the same *McDonnell Douglas* analysis. *Abdu–Brisson*, 239 F.3d at 466; *Lightfoot v. Union Carbide Corp.*, 110

---

1. Although the Defendants' Rule 56.1 Statement of Undisputed Material Facts does not include a paragraph stating, as the Statement does for every other decision-maker, that Slenker did not know Woodman's age, and had never met, seen or spoken to Woodman, this omission appears inadvertent. Slenker's affidavit states that he was unaware of Woodman's age prior to the Merger and that he had never met, seen, or spoken to Woodman. Woodman has never disputed this fact.

F.3d 898, 913 (2d Cir.1997) (noting that while relief differs under the ADEA and NYSHRL, the elements of the claim are essentially identical).

■ Defendants contend that Woodman has failed to show that they were aware of her age at the time of her discharge and has therefore not satisfied her prima facie burden. A plaintiff is required to present prima facie evidence that the discharge "occurred under circumstances giving rise to an inference of discrimination." *Roge*, 257 F.3d at 168. In the vast majority of discrimination cases, an employer's knowledge of protected status can be assumed based on personal contact between the parties or review of the employee's personnel record. Employer knowledge of the protected status is therefore rarely discussed as an element of the discrimination claim. The rarity with which this issue arises, however, should not mask the critical role that knowledge plays in raising an inference of discrimination. It is difficult to conceive of a situation in which it would be appropriate to infer intentional discrimination by an employer who was unaware that an employee belonged to the protected class. As the Third Circuit has observed, "it is counter-intuitive to infer that the employer discriminated on the basis of a condition of which it was wholly ignorant, and in this situation the bare *McDonnell Douglas* presumption no longer makes sense." *Geraci v. Moody–Tottrup Int'l*, 82 F.3d 578, 581 (3d Cir.1996).

Therefore, courts have found that a plaintiff failed to meet her burden of showing prima facie evidence of discrimination under Title VII when she failed to present evidence that her employer knew she was pregnant, *Prebilich–Holland v. Gaylord Entertainment Co.*, 297 F.3d 438, 444 (6th Cir.2002); *Clay v. Holy Cross Hospital*, 253 F.3d 1000, 1007 & n. 7 (7th Cir.2001); *Geraci*, 82 F.3d at 581, or knew her reli-

gion, *Lubetsky v. Applied Card Systems*, 296 F.3d 1301, 1305 (11th Cir.2002), or under the Americans with Disabilities Act when she failed to show that her employer knew of her disability, *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1185 (6th Cir.1996); *Morisky v. Broward County*, 80 F.3d 445, 448 (11th Cir.1996); *Miller v. National Casualty Co.*, 61 F.3d 627, 629–30 (8th Cir.1995); *see also Kolivas v. Credit Agricole*, No. 95 Civ. 5662(DLC), 1996 WL 684167, at *3 (S.D.N.Y. Nov.26, 1996).

In *Brennan v. Metropolitan Opera Association*, 1998 WL 193204 (S.D.N.Y. Apr.22, 1998), the Honorable Michael B. Mukasey had occasion to consider the rare factual scenario in which an employer is unaware of an employee's membership in the protected class of workers over age forty. The plaintiff in that case had lied on her employment verification form, so that she was listed as 36, instead of 46, at the time of the adverse employment action. *Id.* at *1, *6. Judge Mukasey found that the plaintiff had failed to make out a prima facie case of age discrimination since there was no evidence that her supervisors "actually knew" the plaintiff's true age when the decision was made not to rehire her. *Id.* at *9–10. In affirming the judgment in the defendant's favor, the Court of Appeals found it unnecessary to decide whether the plaintiff had met her prima facie burden. *Brennan v. Metropolitan Opera Association*, 192 F.3d 310, 317 (2d Cir.1999).

Woodman argues that she has presented sufficient circumstantial evidence of Defendants' knowledge of her age to meet her prima facie burden. Since each Fox Executive who participated in the decision to terminate Woodman's employment has affirmed that he or she had no knowledge of Woodman's age at the time of her discharge, Defendants have pointed to an absence of evidence to support an essential

element of Woodman's claim. Therefore, Woodman must come forward with specific evidence showing that there is a genuine issue for trial. *Pepsico v. Coca–Cola Company,* 315 F.3d 101, 105 (2d Cir.2002) (per curiam). Affidavits submitted to prove a factual dispute must be admissible in themselves and must contain evidence that would be presented in an admissible form at trial. *Santos v. Murdock,* 243 F.3d 681, 683 (2d Cir.2001) (per curiam).

First, Woodman states that her age was "well known in the market and industry," and that unspecified "people at Fox" knew her age. Conclusory statements, however, are insufficient to defeat a motion for summary judgment. *Opals on Ice Lingerie v. Body Lines,* 320 F.3d 362, 370 n. 3 (2d Cir.2003). Woodman asserts that von Ahrens (the person who replaced her) and Chris–Craft's general counsel knew her age. She has not shown, however, that either of these individuals participated in the decision to terminate her employment, or provided information regarding her age to those individuals. Similarly, the fact that her age was in her Chris–Craft personnel file and the WWOR data base does not provide evidence of knowledge on the part of the Fox Executives who discharged Woodman.

Woodman asserts that the Fox Executives had access under the terms of the merger agreement to a data storage room containing documents listing Woodman's age, but she has not come forth with any evidence that this was so. While she has shown that the merger agreement required production of information relating employment benefit plans, according to undisputed evidence, none of the documents contained the age or date of birth of Woodman or any Chris–Craft employee.

Woodman relies on the EEOC's finding that Defendants offered Woodman a Release that omitted reference to ADEA claims and to the required 45–day consideration period, in violation of the ADEA and OWBPA. Her speculation that Defendants' omission of ADEA claims from the Release indicates a consciousness of age discrimination is too thin to support an inference of age discrimination. If any inference from the omission were appropriate, the more logical inference would be that the employer did not believe it needed to obtain a release of this specific claim since it did not believe it was vulnerable to suit on it.[2]

■ Woodman seeks to create a genuine issue of fact that Fuentes, the head of Human Resources for Fox Television, actually reviewed Chris–Craft personnel information and learned of her age by pointing out that Fuentes incorrectly stated in her deposition that FCC regulations barred Defendants' review of personnel information prior to consummation of the merger. To defeat a motion for summary judgment, a "plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried ... her burden of proving the pertinent motive." *Crawford–El v. Britton,* 523 U.S. 574, 600, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *see also Gubitosi v. Kapica,* 154 F.3d 30, 33 (2d Cir.1998). In order to prove employer knowledge of an employee's protected status in a Title VII action,

---

**2.** Defendants have presented evidence that Fox concluded shortly before the merger that there would be substantial tax savings to discharging Chris–Craft employees and making severance payments *before* the formal completion of the merger. The ADEA-mandated 45– day review period was excluded from the Release Agreement on the recommendation of tax counsel, who advised that the expected tax benefits required Chris–Craft to incur a nonrevocable obligation to make severance payments to discharged employees.

the plaintiff may not rely entirely on an attempt to discredit the employer's testimony concerning the adverse employment decision. *Martin v. Citibank*, 762 F.2d 212, 217 (2d Cir.1985). Instead, the plaintiff must come forward with affirmative evidence of the employer's knowledge at the time of the decision. *Id.* Fuentes' error concerning the FCC regulations does not create affirmative evidence that Fuentes reviewed Woodman's personnel file and learned of her age.

Finally, Woodman argues that the Fox Executives' failure to inform themselves of the ages of employees selected for discharge is simply implausible since it conflicts with good human resources practice. This view of what the Defendants should have done cannot substitute for evidence of what the Defendants did do.[3]

It is certainly true that the evidence as a whole must be assessed to determine whether there is a trial-worthy issue. *Bickerstaff v. Vassar College*, 196 F.3d 435, 448 (2d Cir.1999). It is also true that Woodman may rely on circumstantial evidence to build her prima facie case of discrimination. *See Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir.1998) (standard for jury determination). At the same time, however, "a jury cannot infer discrimination from thin air." *Id.* Although a court must draw all reasonable factual inferences in Woodman's favor, it "must also carefully distinguish between evidence that

allows for a reasonable inference of discrimination and evidence that gives rise to speculation and conjecture." *Bickerstaff*, 196 F.3d at 448. As described above, Woodman has relied on conclusory statements, unsupported allegations, speculation, and attacks on the defendants' credibility. She has not provided evidence from which a jury could reasonably infer that the Defendants actually knew her age at the time of her discharge.[4]

Under the *McDonnell Douglas* framework, if a plaintiff demonstrates a prima facie case of employment discrimination, the burden shifts to the employer to articulate a nondiscriminatory reason for the adverse employment action. *Roge*, 257 F.3d at 168. News Corporation has provided a nondiscriminatory rationale for its decision to terminate Woodman's employment. Upon completion of the Merger, News Corporation owned a duoply in the New York market. News Corporation sought to create a single integrated sales force in New York, eliminating redundant positions to achieve greater efficiency. Defendants chose to keep von Ahrens, a long-term Fox employee and General Sales Manager for Fox's New York station, as the head of sales for the New York duoply based on their satisfaction with von Ahrens' past sales performance, as well as her familiarity with Fox policies and procedures.

---

**3.** As described below, the Defendants, of course, have an explanation for what they did. They combined the back-office operation of their two television stations in the New York area, retaining a Fox employee with whom they were pleased and terminating the now-redundant Chris–Craft employee.

**4.** Woodman argues that she was prevented, by the ruling that restricted discovery to the issue of knowledge, from gathering statistical evidence concerning the discharge of employees at Chris–Craft stations outside New York. Even if statistical evidence were generally suf-

ficient to carry a plaintiff's burden of presenting prima facie evidence of knowledge, and there is authority that it is not, *see, e.g., Jenkins v. Metropolitan Opera Association*, 1999 WL 147745(MBM), at *7 (S.D.N.Y. Mar.18, 1999), the series of inferences that would be required to infer knowledge by the Fox decision-makers in New York based on statistics addressed to force reductions at ten stations across the country would make any inference of knowledge based on statistics here too tenuous.

Once an employer provides a nondiscriminatory reason for its employment action, the burden shifts back to the employee "to prove, by a preponderance of the evidence, that the real reason for the adverse employment decision was discrimination." *Mandell v. County of Suffolk*, 316 F.3d 368, 381 (2d Cir.2003). To prevail in this final stage of the *McDonnell Douglas* analysis, Woodman would once again be required to demonstrate that her discharge was motivated by the Defendants' consideration of her age. "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves*, 530 U.S. at 153, 120 S.Ct. 2097. A demonstration of intentional discrimination requires a showing that the plaintiff's age "actually played a role in the employer's decision-making process and had a determinative influence on the outcome." *Id.* at 141, 120 S.Ct. 2097 (citation omitted).

Woodman's allegations of disputed facts were insufficient to satisfy her prima facie burden of demonstrating knowledge. They also fail to provide evidence from which a fact-finder could determine by a preponderance of the evidence that the Defendants committed intentional discrimination on the basis of Woodman's age.[5] *See Schnabel v. Abramson*, 232 F.3d 83, 88 (2d Cir.2000) (affirming grant of summary judgment when, beyond establishing his prima facie case, the plaintiff offered *"no* evidence that he was discriminated against *because of his age"* (emphasis in original)).

*Mixed–Motive Claim*

Woodman argues that summary judgment is inappropriate because she may be able to prevail on a mixed-motive claim, where both legitimate and illegitimate reasons motivated the employment decision. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). She bases her claim on the Supreme Court's recent ruling in *Desert Palace v. Costa*, —— U.S. ——, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), that mixed-motive cases may be proved by either direct or circumstantial evidence. *Id.* at 2154. The Second Circuit has long followed this rule. *See Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1187 (2d Cir.1992).

*Desert Palace*, moreover, did nothing to change the requirement that a plaintiff bringing a mixed-motive claim demonstrate that an illegitimate consideration played either a "motivating" or a "substantial" role in the employment decision. *Price Waterhouse*, 490 U.S. at 258, 259, 109 S.Ct. 1775; *Rose v. New York City Board of Education*, 257 F.3d 156, 162 (2d Cir.2001) ("the mixed motive issue does not arise unless ... the plaintiff has carried the burden of proving a forbidden motive") (citations omitted). To prove a forbidden motive, Woodman must provide evidence of intentional discrimination, and therefore, knowledge. She has not done so.

*Disparate Impact Claim*

In her opposition to this motion, Woodman asserts a disparate impact claim against Defendants for the first time, arguing that she may prevail on this theory even if the Defendants were unaware of her age. As a precondition to filing a Title VII claim in federal court, a plaintiff must

---

**5.** Woodman again proposes that an alleged "pattern of discrimination," as yet undocumented, in the discharge of employees at other Chris–Craft stations may support a finding that the nondiscriminatory rationale offered by News Corporation is pretextual. Woodman cannot demonstrate that age was the reason behind her discharge unless she can show Defendants were aware of her age.

exhaust available administrative remedies by filing a timely complaint with the EEOC. *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003). The pursuit of administrative remedies is "an essential element of Title VII's statutory scheme, and one with which defendants are entitled to insist that plaintiffs comply." *Francis v. City of New York,* 235 F.3d 763, 768 (2d Cir.2000) (citation omitted). Claims brought in a lawsuit must be included in the plaintiff's EEOC filing or be "reasonably related" to those pursued. *Deravin,* 335 F.3d at 200 (citation omitted).

 A plaintiff makes out a prima facie case of disparate impact "by showing that a facially neutral employment policy or practice has a significant disparate impact." *Byrnie v. Town of Cromwell,* 243 F.3d 93, 111 (2d Cir.2001). The Supreme Court has emphasized that a plaintiff alleging disparate impact must begin "by identifying the specific employment practice that is challenged." *Wards Cove Packing Co. v. Antonio,* 490 U.S. 642, 656, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989) (citation omitted); *see also Byrnie,* 243 F.3d at 111 (holding that simply "gesturing toward the hiring process as a whole" will not suffice).

In her EEOC filing, Woodman alleged that in addition to being succeeded by a younger Sales Manager at WWOR, "all of my nine colleagues at BHC/WWOR who were fired, except two, were over the age of 40. On the other hand, my counterpart in Los Angeles, who is much younger, was not fired. It seems, therefore, that age was a motivating factor in my employment termination." Woodman fails to identify a specific, facially neutral employment practice. *See Wards Cove,* 490 U.S. at 656, 109 S.Ct. 2115. Moreover, she claims that the policy actually governing the discharge of

Chris–Craft personnel was intentionally to retain younger employees while firing older employees. In other words, Woodman asserted only a disparate treatment claim before the EEOC.

Woodman's disparate impact claim is not "reasonably related" to her disparate treatment claim. To determine whether claims are reasonably related, it is necessary to focus on the factual allegations of discrimination to ensure that the substance of the charge, and not the label, controls. *Deravin,* 335 F.3d at 201. The substance of Woodman's EEOC charge is that Defendants' were motivated by illicit consideration of age. This is substantively distinct from an allegation that Defendants promulgated neutral policies that had the effect of disadvantaging older employees. There is no need to consider, therefore, whether Woodman should be permitted at this time to amend her complaint to add a disparate impact claim.[6] Woodman's disparate impact claim was not exhausted.

*Joint Employer Doctrine*

 Relying on *Farulla v. New York School Construction Authority,* 277 F.Supp.2d 140 (E.D.N.Y.2003), Woodman contends that the joint employer doctrine can be used to impute Chris–Craft's knowledge of her age to the Defendants. The joint employer doctrine provides that if two employers share control over decisions such as hiring, firing, discipline, pay, insurance, records, and supervision, a factfinder may in some cases impute the improper *motives* of one employer to another. *Id.* at 144.

The ADEA makes a defendant liable for intentional discrimination. Any injury, therefore, must begin with an identification of the decision-makers, *i.e.,* those who

**6.** It should be noted as well, however, that Woodman still has not identified a facially neutral employment practice, as is required to state a disparate impact claim.

decided to take the adverse employment action against the plaintiff. Here, those decision-makers were at Fox Television. In this circumstance, the fact that Chris–Craft was the instrument for Fox's decision, and that Chris–Craft knew the plaintiff's age when it did so, is insufficient to make the Defendants liable for intentional discrimination.

### Conclusion

The Defendants' motion for summary judgment is granted. The Clerk of Court shall close the case.

SO ORDERED.