**Lisa FISHER, Plaintiff,**

v.

**MERMAID MANOR HOME FOR ADULTS, LLC, Defendant.**

**14-CV-3461 (WFK)(JO)**

United States District Court, E.D. New York.

Signed June 29, 2016

Casimir Joseph Wolnowski, Phillips & Associates, Marjorie Mesidor, Phillips & Associates, PLLC, Steven John Fingerhut, Phillips & Associates, Attorneys at Law PLLC, New York, NY, for Plaintiff.

Jeffrey M. Schlossberg, Paul J. Siegel, Roberto Concepcion, Jr., Jackson Lewis PC, Melville, NY, for Defendant.

## DECISION & ORDER

WILLIAM F. KUNTZ, II, United States District Judge

On June 3, 2014, Lisa Fisher ("Plaintiff") commenced an action against Mermaid Manor Home for Adults, LLC ("Defendant"). *See* Compl., ECF No. 1. The Complaint alleged discrimination and retaliation against Plaintiff on the basis of her national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, ("Title VII") and the New York City Human Rights Law, New York City Administrative Code § 8–107 *et. seq.* ("NYCHRL"). *Id.* ¶ 1. On March 25, 2016, Defendant moved for summary judgment. *See* Summ. J., ECF Nos. 43–52. For the reasons discussed below, the Court DENIES Defendant's motion for summary judgment.

## BACKGROUND [1]

Defendant, a residential assisted living facility, hired Plaintiff, an African American woman, as a Home Health Aid in August 2010. 56.1 State. ¶¶ 13-15, 22-23. In late April of 2013, two co-workers brought an Instagram post to Plaintiff's attention.[2] *Id.* ¶ 39. The Instagram post consisted of two photographs of Plaintiff contrasted with a photograph of the fictional chimpanzee Cornelius from the movie *Planet of the Apes*. *See* Def. Mot. Summ. J., Ex. D (copy of the Instagram photo). The caption accompanying the post read, "Yo dont my fucking coworker looks like conellsussssssssssss from the movie PLANET of the APES lmfaooo." *Id.*

Plaintiff did not immediately report the incident. 56.1 State. ¶ 42. Instead, a co-worker reported the Instagram post to the former Director of Patient Services at Mermaid Manor, Ms. Kathy Keir. *Id.* ¶ 43. Ms. Keir then approached Plaintiff to discuss the incident. *Id.* Plaintiff told Ms. Keir that she had not reported the incident because she was "too ashamed to tell anyone." *Id.* On May 9, 2013, Ms. Keir, followed by Plaintiff, reported the Instagram post to the union and to police. *Id.* ¶¶ 44-45.

Mr. Mordechai Deutscher, the Mermaid Manor Administrator, reviewed the Instagram post on May 9, 2013. *Id.* ¶ 48. On May 13, 2013, Defendant held in-service training to reinforce and review its anti-harassment policy, with subsequent in-service training for those not present. *Id.* ¶¶ 49-50.

On May 15, 2013, Mr. Deutscher learned from Ms. Keir that Plaintiff believed Ms.

Yvonne Kelly, a Home Health Aide from Jamaica, took the photographs of Plaintiff and Ms. Lisi Laurent, a Home Health Aide from Haiti, posted the photos on Instagram. *Id.* ¶¶ 25, 27, 30-31, 33, 52. Both Ms. Laurent and Ms. Kelly are black. *Id.* ¶¶ 29, 32. Mr. Deutscher is a Caucasian male born in the United States. *Id.* ¶ 19.

In an interview with Mr. Deutscher on May 22, 2013, Ms. Laurent admitted to posting the photos on Instagram and claimed Ms. Kelly had taken the photographs. *Id.* ¶ 55. Mr. Deutscher verbally reprimanded Ms. Laurent, reminded her of the anti-harassment policy, and warned her that any further behavior of a similar nature would result in severe discipline. *Id.* Ms. Kelly denied taking the photographs on two separate interviews with Mr. Deutscher. *Id.* ¶¶ 53 (May 20, 2013), 57 (May 25, 2013).

On July 24, 2013, Plaintiff, represented by an attorney, filed a Charge of Employment Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC Charge"). *Id.* ¶¶ 1-2; *see also* Def. Mot. Summ. J., Ex. Y, ECF No. 46 (EEOC Charge). The EEOC Charge identified unlawful discrimination based on race and color. 56.1 State. ¶ 1. Notably, Plaintiff did not check the box for national origin in the EEOC Charge, nor did she identify, as a basis of discrimination, retaliation or any act prior to April 2013, i.e., the date of the Instagram post. *Id.* ¶¶ 5.

Plaintiff commenced this lawsuit on June 3, 2014. *See* Compl. The Complaint alleged neither discrimination based on race nor discrimination based on color.

---

1. At summary judgment, the Court looks to Defendant's Statement of Uncontested Facts Pursuant Rule 56.1, ECF No. 44 ("56.1 State.") and Plaintiff's Response to Defendant's 56.1 Statement, ECF No. 49 ("Resp. 56.1 State."). Contested facts are viewed in the light most favorable to the non-moving party: here, Plaintiff.

2. Instagram is a social media service that permits users to share, or "post," photographs through an online network.

56.1 State. ¶ 10. Instead, the Complaint alleged discrimination based on Plaintiff's national origin as an African American. Compl. ¶ 1. Specifically, Plaintiff alleged national origin discrimination under Title VII, 42 U.S.C. § 2000e *et. seq.*; retaliation under Title VII, *id.* § 2000e-3; national origin discrimination under New York law, New York City Administrative Code § 8-107(1); retaliation under New York law, *id.* § 8-107(7); and *respondeat superior* for discriminatory conduct, *id.* § 8-107(13). Compl. ¶¶ 42-56. On March 25, 2016, Defendant moved for summary judgment.

## DISCUSSION

### I. Legal Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir.2011) (internal quotation marks and citations omitted). No genuine issue of material fact exists "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir.2001) (internal editing omitted) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

If the moving party satisfies this burden, the non-moving party must "make a showing sufficient to establish the existence of [each] element to that party's case

... since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Importantly, if the evidence produced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (internal citations omitted).

### II. Analysis

The Court finds that Plaintiff exhausted her administrative remedies and that issues of material fact preclude summary judgment. Defendant's motion for summary judgment is therefore DENIED.

### A. Exhaustion of Administrative Remedies

As a prerequisite to bringing action under Title VII, Plaintiff must exhaust her administrative remedies by presenting her Title VII claims to the EEOC. *See* 42 U.S.C. § 2000e-5; *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir.2003) ("As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." (internal citations omitted)). Claims not raised in an administrative charge may be brought only if "reasonably related" to the claim filed with the EEOC. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 83 (2d Cir.2001). An unfiled claim is "reasonably related" to a filed claim if the claim "would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made. " *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 158 (2d Cir.2008).

▉ Here, the parties do not dispute that the EEOC Charge filed by Plaintiff, who was represented by counsel, alleged only race and color discrimination. 56.1 State, ¶¶ 1-2; Resp. 56.1 State, ¶¶ 1-2. Plaintiff checked the "Race" and "Color" boxes in the "Discrimination Based On" section, but left the "National Origin" box unmarked. *See* Mot. Summ. J., Ex. Y.

Defendant argues that Plaintiff failed to exhaust her remedies because she did not check the "National Origin" box in her EEOC Charge. The Second Circuit, however, has recognized that:

> [T]he line between national origin discrimination and racial discrimination is difficult to trace, courts have warned that an attempt to make such a demarcation before both parties have had an opportunity to offer evidence at trial is inappropriate. Similarly, courts should not attempt to draw overly fine distinctions between race and national origin claims as part of the threshold exhaustion inquiry prior to the full development of a plaintiff's claims, given the potential overlap between the two forms of discrimination, and the "loose pleading" which is permitted in the EEOC complaint.

*Deravin v. Kerik*, 335 F.3d 195, 202 (2d Cir.2003) (internal quotation marks, citations, and alterations omitted).

Plaintiff's failure to check the "National Origin" box in her EEOC Charge does not preclude her from filing this action. "The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate and take remedial action." *Brown v. Coach Stores Inc.*, 163 F.3d 706, 712 (2d Cir.1998) (internal quotation marks and citation omitted). Here, an EEOC investigator would immediately find that the alleged discrimination occurred among individuals with the same skin color, and an EEOC investigation would be unable to disentangle national origin from race.

Discriminatory conduct prior to April 2013 may be considered in this action. *See* Mot. Summ. J. at 5-6 (listing five alleged events and transactions that occurred prior to April 2013). These prior acts do not support a separate discrimination claim, but provide context to the work environment that fostered the Instagram post. As Ms. Kelly explained during her deposition, Mermaid Manor consisted of "two worlds": "the coconuts, and the . . . American side." Resp. 56.1 State. ¶ 16. Ms. Kelly defined "coconuts" as persons of "Caribbean descent." *Id.* ¶ 18. The record also shows the separation between these two worlds manifested itself in an office culture that permitted the distribution of different work and benefits based upon one's membership as a "coconut" or "American." *See, e.g., id.* ¶ 33 (alleging situations where non-African Americans were permitted to sit or stand idly in a room or by the window, but not African Americans); ¶¶ 39-40 (describing one occasion when Plaintiff was told not to sit on counter, but a non-African American co-worker was permitted to sit on that same counter immediately after Plaintiff left); 56.1 State. ¶ 37 (reporting that African Americans were required to observe residents in the dining room while non-African Americans were not).

For these reasons, the Court finds that Plaintiff sufficiently exhausted her administrative remedies.

## B. Hostile Work Environment

▉ Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

As interpreted by the courts, "Title VII prohibits the creation of a hostile work environment." *Vance v. Ball State Univ.*, —— U.S. ——, 133 S.Ct. 2434, 2441, 186 L.Ed.2d 565 (2013).

■ To demonstrate a hostile work environment, Plaintiff must establish two elements: (1) a workplace with "discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); and (2) "a specific basis ... for imputing the conduct that created the hostile environment to the employer," *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir.2000). *See, e.g., Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir.2002).

### 1. Work Environment

■ Plaintiff may demonstrate the creation of a "sufficiently severe or pervasive" work environment either through a single event that is "extraordinarily severe" or through "a series of incidents ... sufficiently continuous and concerted to have altered the conditions of her working environment." *Howley*, 217 F.3d at 153. "[T]he plaintiff must show that the work environment was so pervaded by discrimination that the terms and conditions of employment were altered." *Vance*, 133 S.Ct. at 2441; *accord Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712 (2d Cir. 2010) ("[T]he work environment was so pervaded by discrimination that the terms and conditions of employment were altered."). In making this determination, the Court considers "all the circumstances." *Harris*, 510 U.S. at 23, 114 S.Ct. 367.

■ Here, a reasonable jury could find that the Instagram post, comparing Plaintiff to a fictional chimpanzee from the *Planet of the Apes* movie, created a hostile work environment. *See, e.g., Awolesi v. Shinseki*, 10–CV–6125, 2013 WL 489646, at *9 (W.D.N.Y. Feb. 7, 2013) (Telesca, J.) (denying defendant's motion for summary judgment against an African American plaintiff's hostile work environment claim because material issues of fact remained where plaintiff's supervisor tied a balloon around a monkey's neck); *Marrero v. R–Way Moving & Storage, Ltd.*, 10 CIV. 5838, 2012 WL 3544752, at *8 (E.D.N.Y. Aug. 16, 2012) (Glasser, J.) (denying defendant's motion for summary judgment against a Hispanic employee's hostile work environment claim where the employee was called a "monkey"); *Lumhoo v. Home Depot USA, Inc.*, 229 F.Supp.2d 121, 154–56 (E.D.N.Y.2002) (Orenstein, M.J.) (denying defendant's summary judgment against an African American plaintiff's hostile work environment claim when racial slurs were commonly used in the workplace); *Ewing v. Coca Cola Bottling Co. of New York*, 00 CIV. 7020, 2001 WL 767070, at *7–8 (S.D.N.Y. June 25, 2001) (McMahon, J.) (denying defendant's motion to dismiss an African American plaintiff's disparate treatment and hostile work environment claims where racial slurs were regularly used by supervisors). The Instagram post, published to the world and seen by Plaintiff's co-workers, humiliated Plaintiff to such an extent that she was found crying in the Mermaid Manor dining room. 56.1 State. ¶ 47;

### 2. Specific Basis for Imputing Conduct

■ Plaintiff must next show "a specific basis ... for imputing the conduct that created the hostile environment to the employer." *Howley*, 217 F.3d at 154. "When the source of the alleged harassment is a co-worker," as is the case here, "the plaintiff must demonstrate that the employer failed to provide a reasonable avenue for complaint or if it knew, or in

the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Id.* at 154 (internal citation and quotation marks omitted); *see also Vance,* — U.S. ——, 133 S.Ct. 2434, 186 L.Ed.2d 565 (clarifying definition of "supervisor"). "The standard for reviewing the appropriateness of an employer's response to co-worker harassment is essentially a negligence one, and reasonableness depends among other things on the gravity of the harassment alleged." *Summa v. Hofstra Univ.,* 708 F.3d 115, 125 (2d Cir.2013) (internal citation and quotation marks omitted); *accord Vance,* 133 S.Ct. at 2439 ("If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions.").

Here, the issue is whether Defendant failed to take appropriate remedial action after it learned of the Instagram post. Defendant had an anti-harassment policy with procedures for reporting harassment. *See* Mot. Summ. J. at Ex. B, ECF No. 45 ("Anti-harassment Policy"); *see also* 56.1 State. ¶¶ 34-35. The policy states, "It is essential ... to notify your manager immediately" of harassment. Anti-harassment Policy at 1. Four days after Mr. Deutscher learned of the Instagram incident, 56.1 State. ¶¶ 43-45, Defendant held an in-service training session, at which Plaintiff, Ms. Laurent, and Ms. Kelly attended, and began an internal investigation into the incident. *Id.* ¶¶ 49, 51, 54-56. The investigation resulted in Ms. Laurent admitting to the Instagram post, for which she was given a verbal reprimand. *Id.* ¶ 55. Ms. Kelly denied taking the two photographs of Plaintiff and was not disciplined. *See id.* ¶ 57.

Defendant's response prevented employees from continuing their harassment of Plaintiff on Instagram. 56.1 State. ¶ 61.

But the lack of such narrow discriminatory action proves too little. Defendant's response failed to address the continuing hostile actions of Ms. Kelly. *See, e.g.,* Resp. 56.1 State. ¶ 57 (intentionally running into Plaintiff); *id.* ¶ 60 (laughing in Plaintiff's face and mocking her around co-workers); *id.* ¶ 62 (attempting to intimidate Plaintiff); *id.* ¶ 63 (removing patient papers from Plaintiff's workbook and putting them in other books); *id.* ¶ 70 (refusing to move out of the doorways for Plaintiff). Despite repeated complaints filed by Plaintiff against Ms. Kelly, Defendant never spoke with Ms. Kelly about these incidents. *Id.* ¶¶ 64, 80-82. Instead, Defendant made matters worse by assigning Plaintiff to work in the same room as Ms. Kelly. *Id.* ¶ 73-74.

Plaintiff, having lost faith in Defendant's avenue for complaint, took her complaints online. 56.1 State. ¶ 61 (posting a video on YouTube). A reasonable jury could find that Plaintiff's reactions, including raising her voice, slamming doors, and yelling in the lobby, were the byproduct of Defendant's refusal to act on Plaintiff's numerous complaints. *See id.* ¶ 63; *see also* Resp. 56.1 State. ¶ 63 (admitting Plaintiff's behavior, but characterizing the behavior as the result of Plaintiff's frustration). A reasonable jury could also find that Defendant's handling of Plaintiff's complaints created such an atmosphere of distrust that Plaintiff found it necessary to make audio recordings of her conversations at work. *See id.* ¶ 65. With the facts construed in the light most favorable to the non-moving party, Plaintiff has sufficiently shown that Defendant "knew of the harassment but did nothing about it." *Feingold v. New York,* 366 F.3d 138, 152 (2d Cir.2004) (citation omitted).

\* \* \*

For these reasons, Defendant's motion for summary judgment against Plaintiff's

hostile work environment claim is DENIED. Furthermore, having satisfied the requirements of Title VII, Plaintiff satisfies the minimum requirements for a discrimination claim under the New York City Human Rights Law ("NYCHRL"). *See Mihalik v. Credit Agricole Cheuvreux*, 715 F.3d 102, 108–09 (2d Cir.2013) (NYCHRL no longer coextensive with its federal counterpart because the federal statute serves only as a "floor").

### C. Retaliation

■ To present a *prima facie* case of retaliation under Title VII, Plaintiff must establish that (1) she engaged in protected activity under Title VII, (2) Defendant was aware of that protected activity under Title VII, (3) Defendant took adverse action against Plaintiff, and (4) there was a causal connection between Plaintiff's engagement in protected activity and the material adverse action against her. *See Fincher*, 604 F.3d at 720.

The parties do not dispute Plaintiff's engagement in a protected activity and that Defendant was aware of that protected activity. Instead, Defendant argues that it took no adverse action against Plaintiff, because Plaintiff suffered no injury or harm from engaging in protected activity. *See id.* at 721 ("The anti-retaliation law 'protects an individual not from all retaliation, but from retaliation that produces an injury or harm.'" (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006))).

■ An adverse action is any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 57, 126 S.Ct. 2405. The law separates "significant from trivial harms," as viewed through the eyes of a "reasonable worker." *Id.* at 68, 126 S.Ct. 2405. Here,

Plaintiff alleges that Defendant took the adverse action through acquiescence in the face of known harassment. A reasonable worker could equate this acquiescence to adverse action, *i.e.*, allowing Ms. Kelly to intentionally run into and hit Plaintiff, laugh in Plaintiff's face in front of co-workers, attempt to intimidate Plaintiff before patients, scramble patient papers from Plaintiff's workbook, and block doorways such that Plaintiff could not pass, Resp. 56.1 ¶¶ 57, 60, 62, 63, 70. After enduring this conduct, Plaintiff "elected" to reduce her work schedule from five days to two days. *Id.* ¶ 89.

Furthermore, as to causation, a reasonable jury could find that Defendant's acquiescence forced Plaintiff to elect to work part time. *See* Resp. 56.1 ¶ 75 ("Plaintiff said that she 'shouldn't have to be harassed on the job because of Yvonne Kelly,'" and that "when I come to you [Mr. Deutscher] and tell you, you tell me it's not true.").

For these reasons, the Court DENIES Defendant's motion for summary judgment against Plaintiff's retaliation claim. The Court also finds that Plaintiff, having satisfied the requirements of Title VII, also satisfies the minimum requirements of the New York City Human Rights Law ("NYCHRL"). *See Mihalik*, 715 F.3d at 108–09.

### CONCLUSION

For the reasons stated above, the Court finds that issues of material fact preclude summary judgment and DENIES Defendant's motion for summary judgment. Trial will begin at 9:30 A.M. on July 11, 2016. **SO ORDERED.**